T.C. Memo. 2005-58


UNITED STATES TAX COURT


BRANDT N. CASTLETON, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6109-03.                    Filed March 28, 2005.


Brandt N. Castleton, pro se.

Catherine L. Campbell, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


MARVEL, Judge:  Respondent determined deficiencies with

respect to petitioner's Federal income taxes of $7,206, $7,040,

and $1,095 for 1998, 1999, and 2000, respectively.[1]

---

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are:

(1)  Whether petitioner should be relieved of deemed admissions resulting from his failure to respond to respondent's requests for admission;

(2)  whether petitioner is entitled under section 170 to deduct certain charitable contributions for 1998, 1999, and 2000;

(3)  whether petitioner received unreported income from Registe Religious Society (hereinafter RRS) during 1999;

(4)  whether petitioner is entitled to claim the child tax credit for 1998 and 1999; and

---

[2]Petitioner did not contest the following adjustments in his petition:  (1) Disallowance of State and local tax deductions of $119 and $413 for 1998 and 2000, respectively; and (2) disallowance of interest deduction of $70 for 1998.  Petitioner did not present evidence to dispute these adjustments at trial or arguments on these adjustments in his brief.  These adjustments are deemed conceded in accordance with Rule 34(b)(4).  On May 12, 2004, the parties filed a stipulation of settled issues in which respondent conceded that petitioner is entitled to dependency exemptions for his daughters Shenara, Keturah, and Adara Castleton for taxable years 1998 and 1999.

Respondent determined that petitioner was entitled to a child tax credit of $1,500 for 2000.  In the notice of deficiency respondent adjusted petitioner's child tax credit by $64 but identified the year of the adjustment as 2000 on Form 4549A, Income Tax Examination Changes, and as 1999 on Form 886-A, Explanation of Items.  For purposes of this opinion we assume that this adjustment is computational and will be dealt with in the Rule 155 computation.

(5) whether petitioner may use head of household filing status for 1998 and 1999.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Puyallup, Washington, when his petition in this case was filed.

Petitioner's 1998, 1999, and 2000 Tax Returns

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for 1998, 1999, and 2000. Using head of household filing status, petitioner reported the following:

| Year | Adjusted gross income | Tax liability |
|------|------------------------|---------------|
| 1998 | $46,829 | $664 |
| 1999 | [1]47,929 | 1,628 |
| 2000 | 34,536 | -0- |

[1]Petitioner's 1999 reported adjusted gross income consisted of wages of $34,910, pension and annuity income of $1,539, and unemployment compensation of $11,480.

Petitioner also claimed dependency exemptions for three of his children, Shenara, Keturah, and Adara Castleton, on each return

---

[3]Petitioner did not contest issues 3, 4, and 5 in his petition. However, petitioner testified at trial that he did not receive any unreported income, that he was entitled to child tax credits of $1,200 and $1,500 for 1998 and 1999, and that he was entitled to head of household filing status. Petitioner also argued on brief that he did not receive any unreported income. Respondent addressed these issues in his pretrial memorandum and did not object to their review by the Court. We shall treat these issues as tried by consent. See Rule 41(b); Shea v. Commissioner, 112 T.C. 183, 190-191 & n.11 (1999).

and child tax credits of $1,200, $1,500, and $1,436 for 1998, 1999, and 2000, respectively.

On his 1998, 1999, and 2000 returns, petitioner also claimed charitable contribution deductions as follows:

| Year | Total charitable deductions | Contributions by cash or check | Contributions other than by cash or check | Carryover from prior year |
|------|------|------|------|------|
| 1998 | [1]$27,517 | $24,317 | $3,200 | -0- |
| 1999 | 15,320 | 15,320 | -0- | -0- |
| 2000 | 13,370 | 4,396 | -0- | $8,974 |

[1]The total amount of charitable deductions claimed was limited to $23,415 by sec. 170(b)(1)(A).

Petitioner's 1998 return included Form 8283, Noncash Charitable Contributions, on which petitioner reported that his 1998 noncash contributions consisted of "COMPUTER, SOFTWARE, PRINTER, DESK, FILE AND CHAIRS" and that the items had been donated to the La Whitmire School Fund.

Dependency Exemptions and Child Tax Credit

Petitioner and Ellen May Castleton (Ellen), petitioner's former wife, have five children:  Shenara, born in 1987; Keturah, born in 1990; Adara, born in 1992; Arthur, born in 1994; and Aaron, born in 1997.  In 1997, petitioner and Ellen divorced, and Ellen became the custodial parent of Shenara, Keturah, and Adara.

On December 23, 1997, the Superior Court of Washington, King County, issued an order of child support (Order) with respect to petitioner's children.  The Order obligated petitioner to pay $992.34 per month in child support as well as other expenses of

the children.  Section 3.17 of the Order, provided that "Tax exemptions for the children shall be allocated as follows: BRANDT NOBLE CASTLETON is awarded tax exemptions unless the mother becomes employed full time, then exemptions shall be split."  Petitioner and Ellen ultimately agreed that petitioner would claim dependency exemptions on his tax returns for Shenara, Keturah, and Adara, while Ellen would claim the exemptions for Arthur and Aaron.

On his 1998 and 1999 returns, petitioner claimed dependency exemptions for Shenara, Keturah, and Adara and child tax credits. In a supplemental stipulation, the parties agreed that petitioner is entitled to the dependency exemptions claimed on his 1998 and 1999 returns but did not address the child tax credits.

Charitable Contributions

Petitioner is a Microsoft-certified professional.  After his divorce, petitioner decided to divest himself of the "garage full" of equipment he had acquired through his studies of computers, software, office equipment, and office equipment repair.  Petitioner discussed this decision with his return preparer, Willie Hughes.  Mr. Hughes, who was affiliated with RRS, recommended that petitioner donate his equipment to the organization.[4]  At some point during the years at issue,

_____

[4]While the parties dispute the true nature of RRS, they have stipulated that RRS did not apply for or receive an exemption
(continued...)

petitioner contributed equipment to RRS and provided the
organization with related services, such as repairing and setting
up the equipment.[5]

The Examination of Petitioner's Tax Returns and the Present
Litigation

In approximately 2001, the Internal Revenue Service began an
examination of petitioner's 1998, 1999, and 2000 tax returns.
Petitioner's case was assigned to Revenue Agent John Leahy.
Petitioner and Agent Leahy first met on September 19, 2001.  The
only documentation petitioner provided Agent Leahy at the
September 19 meeting was a receipt,[6] purportedly from RRS, dated

_____

[4](...continued)
from taxation as an organization described in sec. 501(c)(3) for
1998, 1999, or 2000 and that RRS has not filed any tax forms with
respondent for the periods ending Dec. 31, 1998, through Dec. 31,
2000.

[5]Petitioner testified at trial that he donated equipment to
RRS in 1998 and 1999, that he provided services to RRS in 1999,
that his total donations for 2000 were made to the Church of
Jesus Christ of Latter Day Saints, and that he donated nothing to
RRS in that year.  Respondent's requests for admission include
statements that petitioner provided services to RRS in 1998,
1999, and 2000.  In petitioner's correspondence with respondent
during the examination of his returns, petitioner refers to
contributions he claims to have made to RRS, but he does not
mention any contributions to any other entity.

[6]The receipt also states:

[PETITIONER'S] * * * CONTRIBUTIONS WERE USE [sic] TO
BUILD HOMES IN OUR BLS PROGRAM, TO PROVIDE AFFORDABLE
HOUSING FOR THE POOR, AND FEED THE POOR ALL OVER THE
WORLD WITH OUR INTERNATIONAL FEEDING PROGRAM.

*       *       *       *       *       *       *
(continued...)

January 20, 2000, for $15,320 with respect to petitioner's 1999 contributions and two pages of the Order.  Petitioner provided no documentation to Mr. Leahy with respect to his 1998 and 2000 contributions.

At the end of the meeting, Agent Leahy provided petitioner with a Form 4564, Information Document Request.  The form described the requested materials as follows:

> Contribution Documentation for 1999:
>     If paid in cash - copies of checks
>     If other than cash - Receipts listing fair market
> value of items and item descriptions.  Also to whom
> given (name, address) and date.

Agent Leahy received none of the requested documentation from petitioner.  Instead, he received a letter from petitioner, dated October 22, 2001, in which petitioner stated that the RRS receipt was "All that I have * * * in my records" and that he was otherwise opposed to providing his "PRIVATE banking information" to respondent to substantiate any of his contributions.

---

[6](...continued)
Registe Religious Society was established under the Laws of Washington State (RCW 24.12) and all contributions are Tax Deductible under IRS reg. 501c3(8) as a church or religious society.  All contribution information and funds distribution are administer [sic] by R & R.

Petitioner also stated in the letter that

> most of the donations consisted of sound and video
> electronics, computers, and networking equipment.
> Another large portion of the donation was labor that
> was billed out by [RRS] for my services for repairing
> and setting up the computers I donated, and others that
> the Society got elsewhere.  The donations were recorded
> as cash because that is what they were paid for my
> equipment and services.  90 percent of the actual money
> I gave the Society was by receipt for computer parts I
> purchased * * *.

In a letter dated April 25, 2002, petitioner represented that "All payments for my services were paid to me, and I gave them back to [RRS] as contributions."

On or about January 29, 2003, respondent mailed a notice of deficiency to petitioner in which he disallowed petitioner's charitable contributions, determined that petitioner had unreported income attributable to services he had rendered to RRS during 1999, disallowed the dependency exemptions and child tax credits for petitioner's three daughters for 1998 and 1999, and determined that petitioner owed additional income tax for each of the years at issue.

On April 22, 2003, we received and filed petitioner's petition contesting respondent's adjustments.  On June 16, 2003, we received and filed respondent's answer to the petition.  On September 24, 2003, we served notice on the parties that the case was calendared for trial at the Court's Seattle, Washington, trial session beginning February 23, 2004.  Attached to the notice was our Standing Pretrial Order, which required the

parties, among other things, to exchange documents and other data that the parties intended to use at trial, to stipulate facts to the maximum extent possible, and to prepare a pretrial memorandum and submit it to the Court and the opposing party not less than 14 days before the first day of the trial session. Petitioner failed to comply with the Standing Pretrial Order.

On December 5, 2003, respondent served requests for admission on petitioner by certified mail. See Rule 90. The return receipt indicated a new address for petitioner. Petitioner had failed to notify respondent and the Court of the new address. After learning of the new address, respondent promptly sent a copy of the requests for admission to that address by certified mail. Petitioner's current wife, Julie Rae Castleton, signed both the first and second certified mail receipts, and petitioner admits that he received the requests for admission.

Petitioner never responded to the requests for admission, and, consequently, the matters contained therein were deemed admitted. Rule 90(c); see Freedson v. Commissioner, 65 T.C. 333, 334 (1975), affd. 565 F.2d 954 (5th Cir. 1978). Respondent relied on the deemed admissions in preparing this case for trial. At trial, petitioner made an oral motion to be relieved of the deemed admissions. We reserved ruling on petitioner's motion.

OPINION

A.   Petitioner's Motion for Relief From Deemed Admissions

Generally, a fact that is deemed admitted is conclusively established.  Rule 90(f); see also Sarchapone v. Commissioner, T.C. Memo. 1983-446.  Rule 90(f) provides, however, that the Court, on motion, may permit an admission to be withdrawn or modified if (1) the withdrawal or modification would subserve the presentation of the merits of the case, and (2) if the party obtaining the admission (the respondent in this case) fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits. As we are satisfied that the withdrawal of the deemed admissions would not subserve the merits of the case and would prejudice respondent, we shall deny petitioner's motion for relief from the deemed admissions.[7]

A party will be prejudiced by the withdrawal of admissions if he has relied on them and if he will suffer delay and added expense and will be required to expend additional effort because of the withdrawal.  Morrison v. Commissioner, 81 T.C. 644, 649 (1983).  Respondent relied in good faith on the binding effect of

_____

    [7]Several of the deemed admissions were incorporated into the stipulation of facts.  Moreover, certain of the deemed admissions relating to the dependency exemption issue were effectively withdrawn by the parties' agreement to settle the dependency exemption issue.  The deemed admissions covered by petitioner's motion are those relating to the charitable contribution deduction and unreported income issues.

the deemed admissions to prepare for trial. Petitioner did not move before trial for relief from the deemed admissions and apparently did not notify respondent of his intention to seek relief from the deemed admissions. Most importantly, petitioner did not supply respondent with any documents or information in advance of trial that would have put respondent on notice that any of the deemed admissions were in error. When petitioner finally made his oral motion at trial, he offered the Court no compelling reason why he had failed to respond to the requests for admission.

Because we find that respondent reasonably relied on the deemed admissions and that withdrawal of the deemed admissions would not foster presentation of the merits and would unfairly prejudice respondent, we shall deny petitioner's motion for relief from the deemed admissions. See <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 819 (1985); <u>Morrison v. Commissioner</u>, <u>supra</u> at 649.

B. <u>Income Tax Deficiencies</u>

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving

otherwise.[8]  In this case, petitioner bears the burden of proving that respondent's determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

1.  Charitable Contributions

Subject to certain limitations,[9] section 170(a) authorizes a deduction for charitable contributions made to or for the use of organizations described in section 170(c) within a taxable year. However, a charitable contribution deduction is allowed only if it is verified under regulations prescribed by the Secretary. See sec. 170(a)(1).

If a taxpayer makes a charitable contribution of property other than money (a noncash contribution), the taxpayer generally must retain a receipt for each contribution from the donee.  Sec. 1.170A-13(b)(1), Income Tax Regs.  The receipt must contain the name of the donee, the date and location of the contribution, and a description of the property in detail reasonably sufficient under the circumstances.  Id.  If the taxpayer claims a deduction

---

[8]Petitioner does not contend that sec. 7491 applies to this case, and he has not produced evidence to show he meets the requirements of sec. 7491(a).

[9]Sec. 170(b)(1)(A) provides, in pertinent part, that in the case of an individual, any charitable contribution to a church, educational organization, or other enumerated organization, meeting certain requirements "shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year."  Sec. 170(b)(1)(F) defines contribution base to mean "adjusted gross income (computed without regard to any net operating loss carryback to the taxable year under section 172)."

in excess of $500 for a noncash contribution, the taxpayer must maintain written records that also indicate how the property was acquired, and the cost or adjusted basis of the property.  Sec. 1.170A-13(b)(3), Income Tax Regs.  The taxpayer must establish the reliability of the written records.  Sec. 1.170A-13(a)(2)(i), (b)(2)(i), Income Tax Regs.

If the taxpayer claims a deduction in excess of $5,000 for noncash contributions (other than certain publicly traded securities), he must:  (1) Obtain a qualified appraisal for such property;[10] (2) attach a fully completed appraisal summary to the tax return on which the deduction is first claimed; and (3) maintain records containing the information required in section 1.170A-13(b)(2)(ii), Income Tax Regs.  Sec. 1.170A-13(c)(2), Income Tax Regs.

If the taxpayer makes a charitable contribution of money, the taxpayer must maintain for each contribution either a

---

[10]A qualified appraisal must be made within the proper time in relation to the date of the contribution, must include the information required by sec. 1.170A-13(c)(3)(ii), Income Tax Regs., must not involve a prohibited appraisal fee, and must be prepared, signed, and dated by a qualified appraiser.  Sec. 1.170A-13(c)(3), Income Tax Regs.  In general, a qualified appraiser is an individual who either holds himself out to the public as an appraiser or performs appraisals on a regular basis, is qualified to make appraisals of the type of property being valued, and is not a disqualified individual.  Sec. 1.170A-13(c)(5), Income Tax Regs.  Disqualified individuals include the donor or taxpayer claiming the deduction for the contributed property, the donee of the property, and any person employed by any of the foregoing persons.  Sec. 1.170A-13(c)(5)(iv), Income Tax Regs.

canceled check, a receipt, a letter, or other communication from the donee charitable organization, or other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. The taxpayer must establish the reliability of the written records. Sec. 1.170A-13(a)(2)(i), Income Tax Regs.

A taxpayer may not deduct any charitable contribution of $250 or more unless the taxpayer substantiates the contribution with a contemporaneous written acknowledgment from the charitable organization.[11] Sec. 170(f)(8)(A). The written acknowledgment must include: (1) The amount of cash paid and a description (but not value) of any property other than cash contributed; (2) whether the organization provided any goods or services in consideration for the cash or property; and (3) the estimated value of any goods or services provided by the organization, or if such goods and services consist solely of intangible religious benefits, a statement to that effect. Sec. 170(f)(8)(B).

In order to satisfy his burden of proving that respondent's disallowance of his charitable contributions for the years at issue was incorrect petitioner was required to substantiate his

---

[11]An acknowledgment is contemporaneous if the taxpayer obtains the acknowledgment on or before the earlier of the date on which the taxpayer files a return for the taxable year in which the contribution was made, or the due date (including extensions) for filing such return. Sec. 170(f)(8)(C).

charitable contributions in accordance with section 170 and the above-cited regulations.  See sec. 6001; Gomez v. Commissioner, T.C. Memo. 1999-94; Brown v. Commissioner, T.C. Memo. 1996-43. Petitioner did not do so.

For taxable years 1998 and 2000, petitioner provided conflicting testimony and documents regarding the identity of the donee organizations and whether his contributions consisted of cash or property or both.  Although the substantiation requirements for cash and noncash contributions differ, it is not necessary for us to parse the different requirements because petitioner provided no written substantiation of any kind regarding his 1998 and 2000 contributions.  Consequently, we sustain respondent's determination with regard to petitioner's claimed 1998 and 2000 charitable contribution deductions.

For taxable year 1999, petitioner again offered conflicting testimony and documents regarding the nature of his charitable contributions.  Petitioner's only documentation of his 1999 contributions is a receipt, allegedly from RRS, that indicates petitioner made a $15,320 contribution to the organization during 1999.  The receipt is not sufficient substantiation of petitioner's 1999 charitable contributions for several reasons.

First, petitioner did not prove that RRS was a qualifying organization under section 170.  Section 170(c)(2) defines charitable contribution, in pertinent part, to mean a contribution or gift to or for the use of a corporation, trust,

or community chest, fund or foundation that is organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. The parties stipulated that RRS had not applied for or received an exemption from taxation as an organization described in section 501(c)(3) during or before 1998, 1999, and 2000. Moreover, petitioner did not prove that RRS was an organization of the type described in section 170(c)(2).

Second, even if petitioner had proved that RRS was a qualifying organization under section 170(c)(2), the RRS receipt did not contain the necessary information to adequately substantiate petitioner's alleged 1999 contributions. The receipt purported to substantiate a contribution and did not indicate that any noncash contribution had been made. If petitioner had made a noncash contribution as he testified, the receipt should have described the location of the contributions and the property contributed. The receipt also should have stated whether the donee provided goods or services as a quid pro quo. Sec. 170(f)(8)(B)(ii). The receipt did not provide any of the information necessary to substantiate the contribution that petitioner testified he made.

Third, because petitioner testified that he made noncash contributions having a value in excess of $5,000, petitioner was required to obtain a qualified appraisal. Petitioner did not

produce the required appraisal.

Because petitioner failed to substantiate his 1999 charitable contributions, we sustain respondent's determination disallowing petitioner's 1999 charitable contribution deduction.

2.   Unreported Income

The Commissioner's deficiency determination is normally entitled to a presumption of correctness, Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), and the burden of proving the determination incorrect generally rests with the taxpayer, Rule 142(a).  However, when a case involves unreported income and that case is appealable to the Court of Appeals for the Ninth Circuit, barring a stipulation to the contrary, the Commissioner's determination of unreported income is entitled to the presumption of correctness only if the determination is supported by some evidence linking the taxpayer to an income-producing activity. Palmer v. United States, 116 F.3d 1309, 1313 (9th Cir. 1997). Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing that the Commissioner's determination is arbitrary or erroneous.  Rapp v. Commissioner, supra at 935; Adamson v. Commissioner, 745 F.2d 541, 547 (9th Cir. 1984), affg. T.C. Memo. 1982-371; see also United States v. Janis, 428 U.S. 433, 441-442 (1976).

This case is appealable, barring a stipulation to the

contrary, to the Court of Appeals for the Ninth Circuit. Consequently, we are bound to apply the law of the circuit as summarized above. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The evidence on which respondent relies to satisfy his initial burden of production regarding his determination that petitioner had unreported compensation income from RRS is drawn primarily from letters dated October 22, 2001, and April 25, 2002, that petitioner sent to Agent Leahy during the examination of petitioner's 1998, 1999, and 2000 returns. In those letters, petitioner stated his donations to RRS consisted of equipment and labor and that 90 percent of the "money" he gave RRS was his expenditures to purchase the equipment. Respondent asserted in his pretrial memorandum that based on these statements by petitioner, Agent Leahy determined:

> the 10 percent in excess of the value of the 'donated' property was for services rendered. The portion of the income attributable to donations of services rendered to [RRS] * * * by petitioner in 1999 (ten percent of $15,320 plus the amount of contributions allegedly made in 1999 and carried over to 2000, i.e. $8,794) was determined to be $2,492.

Respondent also relies upon the following deemed admissions:

1. Petitioner provided personal services to RRS in 1999.

2. Petitioner received compensation for personal services provided to RRS in 1999.

3. Petitioner did not include in gross income in 1999 the

compensation for services received from RRS in 1999. Although the evidence summarized above is sufficient to satisfy respondent's initial burden of production, we are not convinced that respondent's income adjustment should be sustained.

The letters on which respondent relies to estimate the compensation petitioner received are unclear at best and seem to reflect that petitioner contributed equipment and services to RRS, which RRS then transferred to unnamed third parties for a fee. It does not appear that petitioner kept any of the funds, even if he received them. Moreover, the amount of the 1999 income adjustment is an estimate drawn from less than clear correspondence, and we are not convinced that the estimate is reliable. Finally, although we acknowledge that petitioner is deemed to have admitted he received compensation for personal services provided to RRS in 1999, the deemed admission does not establish the identity of the payor or the amount of the compensation paid.

Because the record causes us to doubt that respondent's estimate of petitioner's compensation is reliable or correct, we do not sustain respondent's determination that petitioner had unreported income attributable to services he rendered to RRS in 1999.

3. Child Tax Credit

Section 24(a) provides for a credit against tax for each qualifying child of the taxpayer. Section 24(c)(1) defines a

qualifying child as any individual if:

>        (A) the taxpayer is allowed a deduction under
> section 151 with respect to such individual for the
> taxable year,

>        (B) such individual has not attained age 17 as of
> the close of the calendar year in which the taxable year
> of the taxpayer begins, and

>        (C) such individual bears a relationship to the
> taxpayer described in section 32(c)(3)(B).[12]

Respondent has conceded that petitioner is entitled to deductions under section 151 for both 1998 and 1999 with respect to each of petitioner's daughters--Shenara, Keturah, and Adara Castleton. Additionally, none of the girls had attained age 17 by the close of 1998 or 1999. It follows, therefore, that petitioner is entitled to the child tax credit for Shenara, Keturah, and Adara under section 24(a) for 1998 and 1999, and we so hold.

4.    Head of Household Filing Status

Under section 2(b)(1), a taxpayer is allowed to file as head of household if the taxpayer is not married at the close of his taxable year, is not a surviving spouse, and maintains as his home "a household which constitutes for more than one-half of such taxable year the principal place of abode" for certain enumerated individuals, including a son and daughter. Petitioner provided no

---

[12]An individual bears a relationship to the taxpayer described in sec. 32(c)(3)(B) if such individual is the son or daughter of the taxpayer, or a descendant of either, a stepson or stepdaughter of the taxpayer, or an eligible foster child of the taxpayer.

evidence that Shenara, Keturah, Adara, Arthur, or Aaron lived with him at any time during either 1998 or 1999. Consequently, we conclude that petitioner has failed to prove that he qualifies for head of household filing status with respect to his 1998 and 1999 returns, and we sustain respondent's determination regarding petitioner's filing status for those years.

We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein, and, to the extent not discussed above, we reject those arguments as irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.