T.C. Memo. 2006-9


UNITED STATES TAX COURT



BETTY KENDRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2303-04.                    Filed January 23, 2006.



        R disallowed deductions claimed by P, for 2000 and
2001, on account of cash and noncash contributions to
certain churches and charitable organizations.  R also
imposed accuracy-related penalties under sec. 6662(a),
I.R.C.

        1.  <u>Held</u>:  Substantial portions of both cash and
noncash contributions claimed by P are disallowed for
failure to comply with the substantiation requirements
of sec. 170(f)(8), I.R.C., and sec. 1.170A-13(b)(2) and
(3), Income Tax Regs.

        2.  <u>Held</u>, <u>further</u>, R's imposition of the sec.
6662(a), I.R.C., penalty is sustained.


Betty Kendrix, pro se.

<u>Jonathan Sloat</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: By notice of deficiency dated November 4, 2003 (the Notice), respondent determined deficiencies in petitioner's Federal income tax liabilities of $2,114 and $2,499 for her taxable (calendar) years 2000 and 2001 (the audit years), respectively, and accuracy-related penalties of $422.80 and $499.80 for 2000 and 2001, respectively. At the trial of this case, petitioner conceded respondent's denial, for lack of substantiation, of her reported capital loss of $1,733 and respondent's application of the 10-percent additional tax under section 72(t), in the sum of $849, on a premature distribution from her individual retirement account. On brief, respondent concedes a 2001 cash contribution by petitioner of $713. The issues for decision are (1) whether petitioner is entitled to certain charitable contribution deductions for the audit years and (2) whether petitioner is liable for the accuracy-related penalties determined by respondent under section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the audit years, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Los Angeles, California.

Petitioner's Returns and Supporting Documentation

2000

Petitioner filed an Internal Revenue Service (IRS) Form 1040, U.S. Individual Income Tax Return, for 2000 (the 2000 filed return). On line 15 of Schedule A, Itemized Deductions, to that return she claimed a $12,000 charitable contribution deduction for "[g]ifts by cash or check" (the cash contributions).

During respondent's audit of petitioner's 2000 and 2001 filed returns (the audit), petitioner submitted to the examining agent an IRS Form 1040X, Amended U.S. Individual Income Tax Return, for 2000 (the 2000 amended return), which stated that the Schedule A contribution described in the 2000 filed return "was incorrectly written as a cash contribution." On line 16 of the Schedule A attached to the 2000 amended return, petitioner claimed a $12,000 charitable contribution deduction for gifts "[o]ther than by cash or check" (the noncash contributions).

Also attached to that return is an IRS Form 8283, Noncash Charitable Contributions, which lists (1) three separate contributions to Goodwill Industries of items described, variously, as "clothing", "housewares", "audio equipment", "var. items", and "misc items", and (2) a contribution to "L.A. Family Housing" of "appliances, furniture, TV, [and] misc. items". Two of the contributions to Goodwill Industries and the contribution to L.A. Family Housing are each valued at $3,500 by "appraisal", and the other contribution to Goodwill Industries is valued at $1,500 based upon "thrift shop value". In each case, the date of contribution is listed as "various", and the method of acquisition is stated to be by "purchase".

Also, during the audit, petitioner submitted to the examining agent a second IRS Form 8283 for 2000 (the 2000 amended Form 8283), which lists the following noncash contributions for 2000: Three contributions to "Goodwill Los Angeles CA" or "Goodwill" described as consisting of (1) "women clothing FMV est $3413", (2) "linens/houseware/books, videos misc., bicycles $1570", and (3) "audio & electrical items $590"; two contributions to "L.A. Family Housing-L.A., CA" described as consisting of (1) "furniture FMV $2118", and (2) "furniture FMV $2648".

Attached to the 2000 amended Form 8283 are worksheets, prepared by petitioner, one for each of the five above-mentioned

contributions, which list each item included in the contribution by cost and fair market value.  The total dollar value of the items listed on the worksheets ($10,339) matches the total dollar value of the five contributions listed on the 2000 amended Form 8283.

Also attached to the 2000 amended Form 8283 are copies of three receipts furnished by "Goodwill" (the Goodwill receipts), two dated "01-07-00" and one dated "01-17-00", all signed by the same attendant, and a copy of a receipt from "L.A. Family Housing" dated "9-8-00" (the L.A. Family Housing receipt), which is unsigned.  Each of the Goodwill receipts contains petitioner's name and address, and the form itself, under the heading "items received", lists certain types of items (e.g., clothing, shoes/purses, housewares, etc.).  On each receipt someone has filled in the quantity donated, if any, in each category (e.g., clothing, five bags; shoes/purses, five boxes).  The Goodwill receipts do not list values, either per item or in total.  The L.A. Family Housing receipt also contains petitioner's name and address, and it has a line marked "Donation" on which someone has filled in the items donated (e.g., "furniture, 2 beds set, TV, VCR, dinner set").  There is also a line marked "Estimated Value" on which someone has filled in "$5,000".  The L.A. Family Housing receipt also states:  "No goods or services were rendered to you as a result of this donation."

In connection with this litigation, petitioner furnished a receipt for taxable year 2000 cash contributions to "Gospel Temple Baptist Church Partners Program" (the 2000 Gospel Temple Baptist Church receipt), dated February 10, 2000,[1] which lists a total of $6,655 in contributions for 2000 and is signed by both the church pastor and secretary. That contribution was not listed on Schedule A to the 2000 amended return. The 2000 Gospel Temple Baptist Church receipt breaks down the total contribution into 12 monthly contributions ranging from $250 to $450. It also lists specific payments for "Church Anniversary", "Revival", "Annual Choir Concert", "Pastor's Appreciation", and "Building Fund" in amounts ranging from $125 (for "Annual Choir Concert") to $1,200 (for "Building Fund").

2001

Petitioner filed an IRS Form 1040 for 2001 (the 2001 filed return). On line 15 of Schedule A she claimed a $4,598 deduction for cash contributions and, on line 16, a $4,000 deduction for noncash contributions. The IRS Form 8283 attached to that return lists a single noncash contribution to "Goodwill Ind. Los Angeles, CA" of "clothing, furniture, misc items" valued at

---

[1] As discussed infra, petitioner also furnished a receipt for 2001 contributions to the same church dated Feb. 12, 2002. We assume that the receipt for 2000 contributions was inadvertently misdated, and that the writer meant to enter Feb. 10, 2001, as the date of execution of the receipt.

$3,500 based upon "Thrift Shop Value".  The date of contribution is listed as "various", and the acquisition is stated to be by "Purchase".

During the audit, petitioner submitted to the examining agent two IRS Form 1040X amended returns for 2001, only the first of which contains a Schedule A and Form 8283, and neither of which modifies the description of petitioner's 2001 charitable contributions as set forth on the Schedule A and Form 8283 attached to the 2001 filed return.  Subsequently, petitioner furnished another IRS Form 8283 for 2001 (the 2001 amended Form 8283) on which the only change from the two prior Forms 8283 is the substitution of "Salvation Army Los Angeles, CA" for "Goodwill Ind." as the charitable donee.  Attached to the 2001 amended Form 8283 is a worksheet prepared by petitioner similar to the worksheets attached to the 2000 amended Form 8283. Consistent with each of those worksheets, it lists each item included in the contribution by alleged cost and fair market value.  The total dollar value of the items listed on the worksheet ($3,329[2]) is less than both the $3,500 claimed on all three of the Forms 8283 filed or submitted for 2001, and the $4,000 deduction for noncash contributions claimed on the two Schedules A filed or submitted for that year.  Also attached to

---

[2]  The worksheet erroneously states that the total dollar value of the listed items is $3,909.

the 2001 amended Form 8283 is a copy of a receipt furnished by the Salvation Army, dated May 17, 2001, and initialed "OV", which contains petitioner's name and address, a preprinted list of items "we need", and a handwritten list of the items received, consisting entirely of various items of men's and women's clothing and accessories.  The receipt does not list any values.

In connection with this litigation, petitioner furnished receipts for 2001 cash contributions of $713 to West Angeles Church of God in Christ (the 2001 West Angeles Church receipt) and $5,500 to Gospel Temple Baptist Church Partners Program (the 2001 Gospel Temple Baptist Church receipt).  The 2001 West Angeles Church receipt, dated January 31, 2002, consists of a form letter thanking all donors and an attachment detailing petitioner's 2001 contributions, which consisted of donations throughout the year ranging from $1 to $132 in amount, and certifying that "West Angeles Church provided no goods and services in exchange for these contributions."  The 2001 Gospel Temple Baptist Church receipt is identical in form to the 2000 receipt.  Only the $200 contribution for "Revival", the $100 contribution for "Annual Choir Concert", and the April, June, September, and December contributions of $200, $200, $225, and $150, respectively, are less than $250.  The $6,213 total cash contribution claimed by petitioner on the basis of the 2001 West

Angeles Church receipt and 2001 Gospel Temple Baptist Church receipt is more than the $4,598 in cash contributions claimed on the Schedules A attached to the 2001 filed and amended returns.

Petitioner's Voluntary Bankruptcy Petition

On July 28, 1998, petitioner filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Central District of California (the bankruptcy petition).  The bankruptcy petition lists total assets of $4,100 and total liabilities of $118,847 for petitioner.  The bankruptcy petition also lists petitioner's monthly charitable contributions as zero.

Petitioner's 1998 and 1999 Charitable Contribution Deductions

On Schedule A attached to both her 1998 and 1999 Federal income tax returns, petitioner claimed $15,000 in cash contributions.

Petitioner's Employment by the IRS

Petitioner was employed by the IRS for more than 30 years.  She was employed by the IRS's Criminal Investigation Division from 1971 through 1982 and as a revenue officer from 1982 through 2004.

OPINION

I.  Burden of Proof

Generally, petitioner bears the burden of proof.  See Rule 142(a)(1).  Section 7491(a) may shift the burden to the

Commissioner in certain circumstances, but petitioner does not contend, nor has she shown, that she satisfies the prerequisites for the application of section 7491(a). In fact, as discussed infra, petitioner has failed to substantiate adequately many of the charitable contribution deductions at issue. Therefore, she has failed to satisfy the prerequisite of section 7491(a)(2)(A) "to substantiate any item." Moreover, respondent introduced uncontradicted testimony by the examining agent that petitioner refused his request for bank statements and "did not feel she had to answer any question." As a result, she has also violated the prerequisite of section 7491(a)(2)(B) to cooperate "with reasonable requests for * * * information [and] documents". Petitioner bears the burden of proof.

Under section 7491(c), respondent retains the burden of production (but not the overall burden of proof) with respect to petitioner's liability for the accuracy-related penalties determined by respondent under section 6662(a). See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

II. Code and Regulations

A. Code

In pertinent part, section 170(a)(1) provides that a taxpayer may deduct "any charitable contribution * * * payment of which is made within the taxable year", and "[a] charitable contribution shall be allowable as a deduction only if verified

under regulations prescribed by the Secretary."  Pursuant to section 170(c), a "charitable contribution" is "a contribution or gift to or for the use of" an organization described in that subsection.

In pertinent part, section 170(f)(8)(A) disallows a deduction, under section 170(a), "for any contribution of $250 or more unless * * * [substantiated] by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B)."  Under section 170(f)(8)(B), the acknowledgment must state the amount of cash and describe (but not value) any property other than cash contributed, state "whether the donee organization provided any goods and services in consideration, in whole or in part" for the contribution, and provide "[a] description and good faith estimate of the value of any goods and services" provided by the donee organization "or, if such goods or services consist solely of intangible religious benefits, a statement to that effect." The term "intangible religious benefit" is defined to mean "any intangible religious benefit which is provided by an organization organized exclusively for religious purposes and which generally is not sold in a commercial transaction outside the donative context."  Sec. 170(f)(8)(B)(iii).

B.  Regulations

Pursuant to section 1.170A-13(a)(1), Income Tax Regs., cash contributions must be substantiated by either a canceled check, a receipt from the donee showing the donee's name and the date and amount of the contribution, or "other reliable written records" showing the donee's name and the date and amount of the contribution.  Section 1.170A-13(a)(2), Income Tax Regs., provides rules governing the reliability of records.

Pursuant to section 1.170A-13(b)(1), Income Tax Regs., noncash contributions must be substantiated, at a minimum, by a receipt from the donee organization showing the name of the donee, the date and location of the contribution, and a "description of the property in detail reasonably sufficient under the circumstances."  Where it is "impractical" to obtain a receipt, taxpayers must maintain "reliable written records" of their noncash contributions.  See id.  Section 1.170A-13(b)(2), Income Tax Regs., provides rules governing the reliability and content of such records, and paragraph (b)(3) provides information retention and reporting requirements for claimed noncash contributions in excess of $500, which incorporate the rules of paragraph (b)(2)(ii) regarding the content of records.

Pursuant to section 1.170A-13(f)(1), Income Tax Regs., "[s]eparate contributions of less than $250 are not subject to * * * section 170(f)(8), regardless of whether the sum of the

contributions made by the taxpayer to a donee organization during a taxable year equals $250 or more."

III. Discussion

A. Cash Contributions

1. 2000

On brief, petitioner claims a deduction for "documented" 2000 cash contributions of $4,762. In support of that claim, petitioner relies on the 2000 Gospel Temple Baptist Church receipt and a letter, dated December 13, 2004, from West Angeles Church of God in Christ, attached to her opening brief (the West Angeles Church of God letter), stating that petitioner contributed $732 to that church in 2000.[3]

Because the West Angeles Church of God letter was neither shared with respondent before trial, introduced in evidence at trial, or brought to the Court's attention before the record was closed, it is not admissible evidence. Attachments to briefs are not evidence and may not be considered. Rule 143(b); Kwong v. Commissioner, 65 T.C. 959, 967 n.11 (1976); Perkins v.

---

[3] With respect to the 2000 Gospel Temple Baptist Church receipt, petitioner concedes, on brief, that the amounts (totaling $2,300) attributed to "Church Anniversary", "Pastor's Appreciation", and "Building Fund", which constitute the proceeds of fundraisers or benefits organized by petitioner that she donated to the church, do not constitute deductible contributions. That leaves total listed contributions of $4,355 ($6,655 less $2,300). That amount plus the alleged $732 contribution to West Angeles Church of God in Christ totals $5,087, which exceeds the $4,762 that petitioner claims is supported by the documentary evidence of 2000 cash contributions.

<u>Commissioner</u>, 40 T.C. 330, 340 (1963).  Even though petitioner is a pro se taxpayer, application of that rule in this case is appropriate.  The Court, during the trial, specifically advised petitioner:  "You can't add any facts in the brief", and "Any facts that you want me to consider, you have to tell me right now on the record."  Cf. <u>Clifton-Bligh v. Commissioner</u>, T.C. Memo. 2003-44.  Moreover, by failing to state whether West Angeles Church of God in Christ provided any goods or services in consideration, in whole or in part, for what, on its face, appears to be a contribution in excess of $250,[4] the letter fails to satisfy the substantiation requirements of section 170(f)(8). See sec. 170(f)(8)(B)(ii).

We are satisfied that the 2000 Gospel Temple Baptist Church receipt constitutes a "receipt" for the contributions listed therein.  See sec. 1.170A-13(a)(1)(ii), Income Tax Regs.  It fails to state, however, whether the church provided any goods or services in consideration, in whole or in part, for those contributions.  Because the contribution for "Revival" and each of the 12 monthly contributions are stated to be contributions of $250 or more, all of those contributions fail to meet the requirements of section 170(f)(8)(B)(ii).  Therefore, they are

---

[4]  The West Angeles Church of God letter contains no breakdown, by amount, of the $732 in total contributions for 2000.  Therefore, it does not support a finding that all or any portion of that contribution was in increments of less than $250.

nondeductible.  See <u>Castleton v. Commissioner</u>, T.C. Memo. 2005-58 (deduction for contribution of property to allegedly tax-exempt religious organization alternatively denied for failure of the organization to issue a receipt satisfying the requirements of section 170(f)(8)(B)(ii)); see also <u>Roark v. Commissioner</u>, T.C. Memo. 2004-271.  Only the $125 contribution for "Annual Choir Concert" is not subject to section 170(f)(8).  Respondent does not otherwise challenge the 2000 or 2001 Gospel Temple Baptist Church receipts as evidencing petitioner's payment of the amounts listed therein or the status of that church as an organization described in section 170(c).  Therefore, we hold that, for 2000, petitioner is entitled to deduct $125 on account of cash contributed to Gospel Temple Baptist Church for "Annual Choir Concert".

2.  <u>2001</u>

On brief, petitioner claims to have provided documentation sufficient to support a deduction for 2001 cash contributions of $4,133 consisting of $713 in donations to West Angeles Church of God in Christ and $3,400 in donations to Gospel Temple Baptist Church.

Respondent concedes that the 2001 West Angeles Church receipt "satisfies the requirements of [section 170(a)]".  Accordingly, respondent concedes petitioner's entitlement to a $713 deduction for 2001 cash contributions to that church.

The 2001 Gospel Temple Baptist Church receipt, like the 2000 receipt, fails to state whether the church provided any goods or services in consideration, in whole or in part, for the contributions listed therein.  Therefore, all of the listed contributions of $250 or more are nondeductible pursuant to section 170(f)(8)(B)(ii).  Only the $200 "Revival" contribution, the $100 "Annual Choir Concert" contribution, and the respective April, June, September, and December contributions of $200, $200, $225, and $150 (a total of $1,075) are not subject to section 170(f)(8) and are, therefore, deductible.[5]

B.  Noncash Contributions

On brief, petitioner claims to have "documented" noncash contribution deductions of $9,979 for 2000 and $3,329 for 2001, although the total dollar value of the items listed on the worksheets attached to the 2000 amended Form 8283 is $10,339, not $9,979.  She claims that her "documented contributions be allowed for 2000 and 2001."

In support of her valuations of the donated items, which consist of used clothing and accessories, housewares, linens, books, furniture, audio/video equipment, and home appliances, petitioner attached to her opening brief a printed sheet of

---

[5]  Consistent with her position for 2000, petitioner concedes, on brief, that the amounts attributed to "Church Anniversary", "Pastor's Appreciation", and "Building Fund", totaling $2,100, are nondeductible.

unspecified origin which purports to list "suggested price ranges" developed "with the help of Salvation Army and Goodwill" for those types of items. Petitioner argues that her valuations are within the suggested ranges. As stated supra, attachments to briefs are not evidence and may not be considered.

Respondent argues that petitioner is not entitled to any deduction for her alleged noncash contributions because her contribution claims lack credibility and because they do not satisfy the substantiation requirements of the Code and regulations.

Petitioner testified that all of the donated items either were purchased from the son of a deceased girlfriend who needed the money ($3,000) to buy drugs, or were purchased (or picked up) "off the street" and refurbished by her. Petitioner also cites distributions from her thrift plan as a source of funds used to purchase the donated items, although she also testified that she needed and used those funds for living expenses.

Respondent finds petitioner's testimony to be "implausible and uncorroborated," and he concludes, on the basis of the evidence, that "petitioner lacked the property that she claims to have contributed." Respondent lists several reasons for his skepticism. He notes the discrepancy between petitioner's 1998 return, in which she reported cash charitable contributions of $15,000, and her representations in her bankruptcy petition,

under penalty of perjury, that (as of July 27, 1998) she owned $4,100 in total assets and that her current (monthly) expenses did not include any charitable contributions.  Respondent also points to a deposition taken of petitioner (on January 6, 1999), in connection with the bankruptcy proceeding, in which she states that one of her creditors had seized all of her property.  In addition, respondent argues that "[p]etitioner's numerous inconsistent [reporting] positions further undermine her credibility."

Petitioner has failed to corroborate her testimony regarding the manner in which she acquired the allegedly donated items.  Nor has she offered any proof in support of her claims regarding the costs (together with dates of acquisition) of those items as reflected in her worksheets, which, if supported, might give some indication of the values of those items.  Nonetheless, the receipts from Goodwill Industries, L.A. Family Housing, and the Salvation Army are evidence that those organizations did, in fact, receive some amount of used clothing, appliances, furniture, etc., from petitioner.  Respondent does not challenge the authenticity of those receipts, nor does he question the status of those organizations as organizations described in section 170(c), and we find that petitioner delivered the items listed in those receipts to those organizations.

Although the preprinted receipts may be authentic, the receipts furnished by Goodwill Industries and the Salvation Army fail to state whether those organizations provided any goods or services in consideration, in whole or in part, for the items listed therein. Because petitioner claims that the total value of the items listed on each of those receipts is at least (indeed exceeds) $250, those contributions (for 2000 and 2001) are nondeductible pursuant to section 170(f)(8)(B)(ii).[6] That leaves for our consideration only the L.A. Family Housing receipt for 2000, which does state that "no goods or services were rendered to you as a result of this donation" and is, therefore, compliant

---

[6] Internal Revenue Service Publication 526, Charitable Contributions (Rev. Dec. 2000), explains how a taxpayer claims a deduction for a charitable contribution. The publication makes clear that the various record-keeping requirements for noncash contributions depend on the amount of the deduction claimed for the noncash contribution, not on the actual value of the property contributed. Id. at 13. That rule, focusing on the amount of the claimed deduction rather than the value of the property contributed, is supported by the legislative history of sec. 13172 of the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 445, which added para. (8) to sec. 170(f). See H. Rept. 103-111, at 563 (1993), 1993-3 C.B. 167, 441 (describing House bill provisions requiring substantiation for charitable contributions and stating that the responsibility is on taxpayer claiming an itemized deduction of $750 or more (reduced to $250 in Senate amendment) to request substantiation from the charity of the contribution), id. at 565, 1993-3 C.B. 443 (describing the Senate amendment to the same effect), id. at 567, 1993-3 C.B. 445 (describing the conference agreement as following the Senate amendment). Thus, sec. 170(f)(8) applies to petitioner's noncash contributions by virtue of her claim that each of those contributions was at least $250. It is of no consequence that the actual value of the items of the property on each receipt may have been less than $250.

with section 170(f)(8)(B)(ii).  However, that receipt, for a claimed deduction of $4,766, does not contain "[a] description of the [donated] property in detail reasonably sufficient under the circumstances", as required by section 1.170A-13(b)(1)(iii), Income Tax Regs.  See also Castleton v. Commissioner, T.C. Memo. 2005-58.  Although it sets forth a list of items (e.g., furniture, beds, TV, VCR, dinner set, stove, "old" recorder) and a total "estimated value" of $5,000, the L.A. Family Housing receipt contains almost no information regarding the quality, age, or condition of the donated items that would enable us to ascertain their value at the time of the donation.  Therefore, there is no evidence that the $5,000 estimated value is accurate or that it was furnished by the donee rather than by petitioner.[7]

We also find that petitioner's worksheets listing the items allegedly donated to L.A. Family Housing Counsel fail to comply with the requirement of section 1.170A-13(b)(2)(ii)(D), Income Tax Regs., regarding the content of a taxpayer's written records, that such records state "the method utilized in determining the fair market value" of the donated property.  The only semblance of a valuation methodology is petitioner's practice of valuing each item at less than the alleged cost of that item.  But

---

[7]  Petitioner's valuation of the items allegedly donated to L.A. Family Housing, as set forth in her worksheets attached to the 2000 amended Form 8283 ($4,766) is close enough to $5,000 to suggest that that figure was furnished by petitioner rather than L.A. Family Housing.

petitioner has furnished no evidence (such as canceled checks or bank withdrawals contemporaneous with the property acquisition dates) that would support her cost figures.[8]  Moreover, because petitioner's worksheets were attached to an amended Form 8283 that was furnished to respondent on December 23, 2002, in connection with the audit, we infer that they were not prepared contemporaneously with the contributions in 2000, a fact which casts doubt upon the reliability of those worksheets.  See sec. 1.170A-13(a)(2)(i)(A), Income Tax Regs.  Under these circumstances, we find that petitioner's worksheets are inadequate to substantiate her claimed deduction for noncash contributions to L.A. Family Housing in 2000.

Nonetheless, as noted, supra, we are satisfied that petitioner did donate property to L.A. Family Housing, which raises the issue as to whether we may use our discretion under the Cohan rule to find some amount of allowable deduction for the property donated to L.A. Family Housing.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), under which we may estimate the amount of a deductible expense, bearing heavily against the taxpayer whose inexactitude is of his or her own

---

[8]  Even if we were to admit into evidence the printed list of "suggested price ranges" developed "with the help of Salvation Army and Goodwill" attached to petitioner's opening brief (see discussion, supra), the correlation between the items on that list and the items on petitioner's worksheets is unclear. Moreover, as a list of "suggested" price ranges, that list is not evidence of the actual value of any particular item.

making.  The issue is whether Cohan is applicable in the face of the statutory admonition of section 170(a)(1) that "[a] charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary."  Here, petitioner has not complied with the verification requirements of section 1.170A-13(b), Income Tax Regs., nor has there been even substantial compliance with those regulations.  (See Bond v. Commissioner, 100 T.C. 32, 41 (1993), in which we held that the reporting requirements of the regulations under section 170 are "directory and not mandatory", and that substantial (as opposed to literal) compliance with those regulations is sufficient to sustain a claimed charitable contribution deduction.)  On a number of occasions, this Court has utilized the Cohan rule to permit deductions for a portion of claimed charitable contributions that have not been adequately substantiated.  See, e.g., Fontanilla v. Commissioner, T.C. Memo. 1999-156; Drake v. Commissioner, T.C. Memo. 1997-487; Cavalaris v. Commissioner, T.C. Memo. 1996-308; Bernardeau v. Commissioner, T.C. Memo. 1981-584; Olken v. Commissioner, T.C. Memo. 1981-176.  In none of those cases did we squarely address the potential conflict between section 170(a)(1) and our application of Cohan to unverified or inadequately substantiated charitable contributions.  Nor is it necessary to do so in this case, because the deduction we would be inclined to allow by applying

the Cohan rule ($300) would result in total itemized deductions for 2000 that are less than the standard deduction applicable to a head of household that respondent has allowed to petitioner in computing her deficiency for that year. Therefore, because of our disallowances with respect to petitioner's claimed deductions for cash and (other) noncash contributions for 2000, the issue of whether we may allow her a deduction, under the Cohan rule, for noncash contributions to L.A. Family Housing is moot.

C. Section 6662(a) Penalty

Section 6662(a) imposes a penalty equal to 20 percent of the underpayment in tax attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence). See sec. 6662(b)(1). The penalty for negligence will not apply to an underpayment of tax to the extent the taxpayer can show both reasonable cause and that the taxpayer acted in good faith. See sec. 6664(c)(1). Negligence "includes any failure by the taxpayer * * * to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

All of the charitable contributions deductions that we have disallowed herein are attributable to a lack of adequate substantiation, including the deductions disallowed because the acknowledgments obtained by petitioner from donees were in violation of section 170(f)(8). Petitioner's failure to obtain acknowledgments stating that the donee did not provide goods or

services in consideration, in whole or in part, for all but one of her cash and noncash contributions in excess of $250 constituted a failure to comply with what is specifically described by the Internal Revenue Code as a "[s]ubstantiation requirement". See sec. 170(f)(8). Petitioner, a long-time IRS employee and self-professed frequent contributor to charitable organizations, should have been aware that all but one of the donee acknowledgments failed to satisfy the special substantiation requirement of section 170(f)(8)(B)(ii), and she should have asked the issuing donee organizations to satisfy that requirement before deducting her contribution to those organizations in excess of $250. Not only is the requirement to obtain a proper acknowledgment set forth in the Code and in the regulations (see sec. 1.170A-13(f)(2)(i)), it is also contained in both the instructions for preparing Schedule A (see, e.g., 2000 Instructions for Schedule A, Itemized Deductions, p. A-4) and IRS Publication 526, Charitable Contributions, 13 (Rev. December 2000).

By demonstrating petitioner's failure to substantiate the charitable contributions disallowed herein, respondent has met his burden of production, under section 7491(c), with respect to his determination of penalties under section 6662(a). Because petitioner has failed to meet her burden of proving that she acted with reasonable cause and good faith, we sustain

respondent's determination that petitioner is liable for the accuracy-related penalty on her underpayments for the audit years associated with the charitable contribution deductions disallowed herein. See Higbee v. Commissioner, 116 T.C. at 449. We also sustain respondent's imposition of that penalty on petitioner's underpayment associated with the conceded adjustments for 2001 (respondent's denial of petitioner's reported capital loss of $1,733 for lack of substantiation and respondent's application of the 10-percent additional tax, in the sum of $849, on a premature distribution from petitioner's individual retirement account).[9]

IV. Conclusion

As noted supra note 9, we sustain the full amount of respondent's tax deficiency and penalty determinations.

Decision will be entered

for respondent.

-------------------

[9] Our disallowance of petitioner's deductions for charitable contributions (although less than respondent's) still has the effect of requiring the identical recomputation of petitioner's tax liability for both 2000 and 2001, whereby respondent applied the standard deduction applicable to a head of household. Consequently, we sustain the full amount of respondent's tax deficiency and penalty determinations for the audit years.