T.C. Summary Opinion 2009-16

UNITED STATES TAX COURT


LISA R. COLEMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12085-07S, 16591-07S.     Filed January 29, 2009.


Lisa R. Coleman, pro se.

<u>Scott B. Burkholder</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect when the petitions were filed. Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For 2004 and 2005 respondent determined deficiencies in petitioner's Federal income taxes of $3,090 and $3,409 and accuracy-related penalties under section 6662(a) of $618 and $681.80, respectively. Respondent disallowed petitioner's claimed deductions for "Schedule A taxes" of $3,370 and her $19,441 charitable contribution deduction for 2004.[1] For 2005 respondent disallowed petitioner's claimed $5,993 theft loss deduction, her $11,396 mortgage interest deduction, and $10,561 of her claimed $11,061 charitable contribution deduction.

For 2004 and 2005 respondent concedes that petitioner is entitled to deductions for charitable contributions of $1,239.26[2]

_____

[1]Petitioner's $19,441 charitable contribution deduction included a $562 carryover from 2003. Petitioner neither argued nor established that she had a $562 carryover from 2003. Petitioner is deemed to have conceded the issue. See Money v. Commissioner, 89 T.C. 46, 48 (1987); see also Stutsman v. Commissioner, T.C. Memo. 1961-109 (and cases cited therein).

[2]The $1,239.26 figure consists of amounts evidenced by: (1) Copies of checks numbered 8652, 8653, 8662, 8674, and 8720 payable to Bethel Pentecostal Church (Bethel) that total $395.25; (2) copies of checks numbered 8713 and 8823 payable to "Bishop Martin" and "Sister Cascada" that total $125; and (3) copies of checks numbered 8686, 8712, 8851, 8794, 8790, 8776, and 8793 payable to various persons who performed services for the church that total $719.01.

and $3,014[3] and "Schedule A taxes" of $3,370 and $3,582, respectively.

The issues remaining for decision are whether petitioner is: (1) Entitled to claim charitable contribution deductions in excess of those respondent allowed; (2) entitled to claim a mortgage interest deduction of $11,396 for 2005; (3) entitled to claim a theft loss deduction of $5,933 for 2005; and (4) liable for the accuracy-related penalty for each year.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petitions were filed, petitioner resided in California.

## Charitable Contributions

During the years at issue, petitioner was employed as a law enforcement technician with the Los Angeles County Sheriff's Department. She also served as the pastor of Bethel, which is a member church of Mount Sinai Holy Church of America, Inc.

---

[3]The $3,014 figure consists of amounts evidenced by: (1) Copies of checks numbered 8950, 9016, 9043, 9044, 9046, 9068, 9084, 9144, 9168, and 9177 payable to Bethel that total $280; (2) copies of checks numbered 8981, 8990, 9145, 9146, 9149, 9150, and 9167 payable to various charities that total $1,200; (3) copies of checks numbered 8996 and 9119 payable to various persons who provided services for Bethel that total $200; (4) copies of checks numbered 9032 and 3215 payable to "Bishop T. Martin" and "Thomas Martin" that total $834; and (5) $500 that was allowed by respondent's revenue agent during the examination of petitioner's return.

Petitioner made expenditures on behalf of Bethel by cash or check
For example, petitioner purchased a 15-passenger van for use by
Bethel so that she could pick up church members for Sunday school
and morning worship. The van bears Bethel's name and is parked
on Bethel's premises, but it is titled in petitioner's name. In
addition, petitioner purchased a "250 foot black rod [sic] iron
fence" that runs the perimeter of Bethel's property.

On petitioner's Schedules A, Itemized Deductions, attached
to her Forms 1040, U.S. Individual Income Tax Return, petitioner
claimed deductions for charitable contributions of $19,441 and
$11,061 for 2004 and 2005, respectively. As reflected on
petitioner's 2004 Schedule A, her charitable contribution
deduction consisted of gifts by cash or check of $18,379, gifts
other than by cash or check of $500, and a $562 carryover from
2003. As reflected on petitioner's 2005 Schedule A, her
charitable contribution deduction consisted of gifts by cash or
check of $10,561 and gifts other than by cash or check of $500.
In the notices of deficiency for 2004 and 2005, respondent
disallowed "Cash Contributions" of $19,441 and $10,561,
respectively. Respondent disallowed petitioner's claimed "Cash
Contributions" because petitioner "did not verify that the
amounts shown were contributions, and paid; [therefore,] the
amounts are not deductible."

Mortgage Interest Deduction

On April 25, 2006, letters of administration were filed naming petitioner as the legal representative of her mother's estate. Petitioner's mother, Lula Mae Coleman, died intestate on August 15, 2005. In 2005 petitioner made some payments to the entities holding mortgages on her parent's home at "319 E Newfield St". Petitioner, however, has lived in her home at "E 90th" for over 11 years and resided at her "E. 90th" home during 2005. On petitioner's 2005 Schedule A, she claimed an $11,396 mortgage interest deduction for the interest paid with respect to the mortgages on her parent's home at "319 E Newfield St". Respondent disallowed petitioner's claimed mortgage interest deduction because she did not establish that the amount was her interest expense and that she paid it.

Theft Loss Deduction

On October 27, 2005, petitioner filed an incident report for a burglary at Bethel. On the incident report, the police officer recorded petitioner's statement that two computers, including monitors and printers, worth $2,000 were stolen. Petitioner also submitted a "Supplementary Loss Report", on which she claimed a total additional loss of $10,740. Petitioner claimed that the additional loss items consisted of musical equipment, chaffing dishes, roasters, a "T.V.", computer equipment, food, clothes, toys, and cases of paper.

On petitioner's 2005 Schedule A, petitioner described the event as a "HOME BURGLARY" in which various household items with a basis of $19,145 and a $10,148 fair market value were stolen. Petitioner claimed a $5,933 "TOTAL" theft loss that respondent disallowed because she did not establish that a theft occurred and that she sustained a loss.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). But the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the taxpayer introduces credible evidence with respect to the issue and the taxpayer has satisfied certain conditions. See sec. 7491(a)(1). Petitioner has not alleged that section 7491(a) applies, and she has neither complied with the substantiation requirements nor maintained all required records. See sec. 7491(a)(2)(A) and (B). Accordingly, the burden of proof remains on her.

### II. Charitable Contribution Deductions

Petitioner testified that Bethel was in need of repairs when she "received" it and that she "put a lot of money into the church because I think that that's my responsibility as the

pastor of the church to make sure that the church is functioning and in decent order." According to petitioner, she had to rent equipment, charge things to her Home Depot account, and hire men to perform repairs. "[She] had to pay that on behalf of the church because the church did not have a fund in order to do that. That's where [her] contributions came from."

Unreimbursed expenditures made incident to the rendition of services to a qualifying charitable organization may constitute a deductible contribution. Rockefeller v. Commissioner, 76 T.C. 178, 183 (1981), affd. 676 F.2d 35 (2d Cir. 1982); McCollum v. Commissioner, T.C. Memo. 1978-435; Miller v. Commissioner, T.C. Memo. 1975-279; sec. 1.170A-1(g), Income Tax Regs. But deductions for charitable contributions are allowed "only if verified under regulations prescribed by the Secretary." Sec. 170(a).

A.  Monetary Contributions of Less Than $250

In pertinent part, section 1.170A-13(f)(1), Income Tax Regs., provides that separate contributions of less than $250 are not subject to the "contemporaneous written acknowledgment" requirement of section 170(f)(8) regardless of whether the sum of the contributions to an organization equals $250 or more. Rather, monetary charitable contributions of less than $250 must be substantiated by a canceled check; a receipt from the organization that shows the name of the donee, the date of the

contribution, and the amount thereof; or "other reliable written records" that show the name of the donee, the date of the contribution, and the amount thereof.  Sec. 1.170A-13(a)(1), Income Tax Regs.  A letter or other communication from the organization that acknowledges the receipt of a contribution and that shows the date and amount thereof constitutes a receipt. Id.

Sec. 1.170A-13(a)(2), Income Tax Regs., provides that the reliability of "other reliable written records" is determined on the basis of all of the facts and circumstances.  Factors indicative of reliability include but are not limited to: (1) The contemporaneousness of the writing evidencing the contribution; (2) the regularity of the taxpayer's recordkeeping procedures, e.g., a contemporaneous diary entry stating the amount and date of the contribution and the name of the organization that is made by a taxpayer who regularly makes such diary entries; and (3) in the case of a de minimis contribution, any written or other evidence from the organization evidencing the contribution that would not otherwise constitute a receipt (including a "token" traditionally associated with the organization and regularly given by the organization to persons making cash donations).  Id.

Petitioner has submitted into evidence a log of the 2004 and 2005 disputed monetary contributions of less than $250 and copies of the following canceled checks:

| Date | Check No. | Payee | Amount | Description |
|---|---|---|---|---|
| 12/03[1] | 8632 | Cash | $20.00 | Donation |
| 1/04 | 8645 | Sparkletts Water | 15.25 | Water |
| 1/04 | 8650 | Sam's Club | 170.51 | Supplies |
| 2/04 | 8684 | Mr. Barrueta | 55.00 | Repair-elec. |
| 3/04 | 8705 | OfficeMax | 25.00 | Supplies |
| 4/04 | 8740 | U.S. Postmaster | 34.00 | Postage |
| 5/04 | 8749 | Sparkletts Water | 104.00 | Water |
| 4/04 | 8756 | OfficeMax | 66.00 | Supplies |
| 6/04 | 8764 | OfficeMax | 67.00 | Supplies |
| 6/04 | 8774 | Gas Co. | 30.00 | Utilities |
| 6/04 | 8781 | Sparkletts Water | 10.00 | Water |
| 6/04 | 8787 | Sam's Club | 100.03 | Supplies |
| 8/04 | 8833 | Sparkletts Water | 128.00 | Water |
| 9/04 | 8850 | Sam's Club | 161.55 | Supplies |
| 11/04 | 8870 | U.S. Postmaster | 34.00 | Postage |
| 4/05 | 9034 | Bishop Batten[2] | 100.00 | Donation |
| 4/05 | 9187 | Pastor Johnson[2] | 50.00 | Donation |
| Total | | | 1,170.34 | |

[1] This contribution was made in 2003 and thus is not deductible as a charitable contribution for 2004. See sec. 170(a)(1). Respondent's disallowance thereof is sustained.

[2] Respondent disallowed the deductions for these contributions, reasoning that the payments fail the "to or for the use of" the organization requirement, see sec. 170(c), since the checks were deposited into the individuals' personal banking accounts rather than an account of a charitable organization. Since petitioner has not proven that the payments were "to or for the use of" a charitable organization rather than for the personal use of the individuals, respondent's disallowance thereof is sustained. See Davis v. United States, 495 U.S. 472, 478-486 (1990).

Petitioner's log also lists the following cash contributions of less than $250 for 2004, which respondent disputes:

| Date | Payment method | Recipient | Amount | Description |
|------|--------|-----------|--------|-------------|
| 2/04 | Cash | Los Angeles Mission | $35.55 | Gift |
| 8/04 | Cash | Los Angeles Mission | 26.55 | Gift |
| 10/04 | Cash | Los Angeles Mission | 45.00 | Gift |
| 12/04 | Cash | Los Angeles Mission | 37.17 | Gift |
| 8/04 | Cash | March of Dimes | 50.00 | Gift |
| 11/04 | Cash | Neighborhood curb painting | 10.00 | Gift |
| 3/04 | Cash | Easter Seals | 75.00 | Gift |
| 6/04 | Cash | United Negro College Fund | 100.00 | Gift |
| 8/04 | Cash | United Negro College Fund | 150.00 | Gift |
| Total | | | 529.27 | |

Petitioner has not provided receipts substantiating the foregoing charitable contributions. Petitioner's entitlement to her charitable contribution deductions therefore hinges on the canceled checks or her "other reliable written record".

The Court finds that neither the notations on the canceled checks nor the payees of the canceled checks prove that petitioner paid the expenses on Bethel's behalf. Indeed, the subject matter of the canceled checks indicates that the expenditures might be nondeductible personal expenses. See sec. 262(a).

With respect to the log, it is dated "11/22/06" and appears to have been created by petitioner's return preparer, Mr. Applewhite. Thus, petitioner has failed to establish the contemporaneous nature of the log, and she has not established

that she regularly and contemporaneously recorded her contributions in the log. See sec. 1.170A-13(a)(2)(i)(A) and (B), Income Tax Regs. The Court accords little probative weight to the log.

Without other reliable evidence to substantiate her deductions for charitable contributions of less than $250 for 2004 and 2005, the Court finds that petitioner is not entitled to claim her deductions. In addition, the Court will not apply the Cohan rule to estimate a deductible amount. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); see also Bond v. Commissioner, 100 T.C. 32, 41 (1993) ("the reporting requirements [of section 1.170A-13, Income Tax Regs.,] are directory and not mandatory."); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985) (an estimate must have a reasonable evidentiary basis). Without reliable evidence upon which to base an estimate, an allowance here would amount to "unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Accordingly, respondent's determinations are sustained.

B. Donations of Money or Property of $250 or More

As is relevant here, section 170(f)(8) provides that no deduction is allowed for all or part of any charitable contribution of $250 or more unless the contribution is substantiated by a contemporaneous written acknowledgment from the organization. See also sec. 1.170A-13(f)(1), Income Tax

Regs. A written acknowledgment is contemporaneous if it is obtained by the taxpayer on or before the earlier of the date the taxpayer files the original return for the taxable year of the contribution or the due date (including extensions) for filing the original return for the year. Sec. 170(f)(8)(C); sec. 1.170A-13(f)(3), Income Tax Regs. The written acknowledgment must state the amount of cash and a description (but not necessarily the value) of any property other than cash that the taxpayer donated and whether the organization provided any consideration to the taxpayer in exchange for the donation. Sec. 170(f)(8)(B)(i) and (ii); sec. 1.170A-13(f)(2)(i) and (ii), Income Tax Regs.

To substantiate the following disputed 2004 deductions for charitable contributions of $250 or more, petitioner has submitted into evidence a log of her contributions and certain letters:

| Date | Payment method | Recipient | Amount | Description |
|------|----------------|-----------|--------|-------------|
| "various" 2004 | Cash | Bethel | $18,293.71 | |
| "various" 2004 | Cash | Bethel | 4,091.20 | Van payments |
| 2004 | Cash | Bethel | 794.39 | Van insurance |
| 4/04 | Property | Dorothy Brown School | 500.00 | 7 bags clothing, TV, household items |
| 7/04 | Property | Dorothy Brown School | 500.00 | 10 bags clothing, TV, household items |
| Total | | | 24,179.30 | |

To substantiate the following disputed 2005 deductions for charitable contributions of $250 or more, petitioner has submitted into evidence a log of her contributions, copies of canceled checks, certain letters, and photographs:

| Date | Payment method | Recipient | Amount | Description |
|---|---|---|---|---|
| 9/05 | Check No. 9141 | Mr. Degado | $1,000.00 | Repair-church |
| 10/05 | Check No. 9151 | Bishop Batten | 300.00 | Donation |
| "various" 2005 | Cash | Bethel | 9,000.00 | Wrought iron black fence |
| "various" 2005 | Cash | Bethel | 1,000.00 | Tractor mower |
| "various" 2005 | Cash | Bethel | 3,854.68 | Van payments |
| 2005 | | Bethel | 1,124.63 | Van insurance |
| 4/05 | Property | Dorothy Brown School | 500.00 | 7 bags clothing, TV, household items |
| Total | | | 16,779.31 | |

Although petitioner's log shows a $13,038 charitable contribution for 2004, petitioner has provided three letters purporting to substantiate cash contributions of $18,293.71 to Bethel during 2004.[4]  A letter from Bishop Coward, dated June 3,

---

[4]The log and the letters fail to differentiate between contributions that were below $250 and those of $250 or more in the $18,293.71 sum that petitioner alleges that she paid at various intervals during 2004.  The Court notes that such cash contributions would not be deductible even under the less stringent standard of sec. 1.170A-13(a)(1), Income Tax Regs., because the letters do not show the dates of the "various" contributions or the amounts thereof.

2008, alleges that petitioner paid $18,293.71 in 2004 for "major repair work on the property".  A letter from Pastor Kincy, dated January 14, 2005, alleges that petitioner made a "contribution of $18,293.71" in 2004.[5]  A letter from Secretary Jackson, dated December 4, 2006, alleges the same.

Aside from other defects,[6] the three letters and the log fail to satisfy the requirement that the organization provide a statement as to whether or not the organization provided any goods or services in consideration for the donation.  See sec. 170(f)(8)(B)(ii); sec. 1.170A-13(f)(2)(ii), Income Tax Regs. Therefore, petitioner's $18,293.71 charitable contribution deduction is not allowable.  See Kendrix v. Commissioner, T.C. Memo. 2006-9 (disallowing the taxpayer's charitable contribution deductions because the requirements of section 170(f)(8)(B)(ii) were not satisfied since the "receipts" did not state whether the church provided any goods or services in consideration for the contributions); Castleton v. Commissioner, T.C. Memo. 2005-58, affd. 188 Fed. Appx. 561 (9th Cir. 2006).

---

[5]Petitioner testified that the title "Elder L.C. Kincy" is the name that she uses in her pastorage.

[6]Specifically, the defects include:  (1) Petitioner's log is not a written acknowledgment from the organization; (2) petitioner's log, the Bishop Coward letter, and the Secretary Jackson letter were not contemporaneous; and (3) the Pastor Kincy letter acknowledging petitioner's own charitable contributions is suspect in that it purports to be written by an individual other than petitioner.  Thus, the Court accords little weight to the Pastor Kincy letter.

Petitioner cannot deduct the $1,000 charitable contribution for a tractor lawnmower that she allegedly donated to Bethel because neither the log nor the letter, dated February 5, 2007, evidencing the contribution satisfies the contemporaneous acknowledgment requirements of section 1.170A-13(f)(2) and (3), Income Tax Regs.

Petitioner cannot deduct the $300 payment to Bishop Batten because neither the log nor the canceled check evidencing the payment satisfies the acknowledgment requirements of section 1.170A-13(f)(2) and (3), Income Tax Regs.  In addition, since the check was deposited into Bishop Batten's personal bank account rather than an account of a charitable organization, petitioner has not proven that the payment was "to or for the use of" a charitable organization rather than for the personal use of the individual.  See sec. 170(c); Davis v. United States, 495 U.S. 472, 478-486 (1990).

Petitioner cannot deduct the items donated to the Dorothy Brown School because the log evidencing the contribution does not satisfy the contemporaneous acknowledgment requirements of section 1.170A-13(f)(2) and (3), Income Tax Regs.

Petitioner submitted no other records and did not present testimony from any other representative of Bethel to substantiate her $18,293.71 cash contributions, her donation of the tractor lawnmower, or her $300 payment to Bishop Batten.  Similarly,

petitioner provided no other evidence to substantiate her charitable contributions to the Dorothy Brown School. Accordingly, the Court will not apply the <u>Cohan</u> rule to estimate a deductible amount.  See <u>Williams v. United States</u>, 245 F.2d at 560; <u>Vanicek v. Commissioner</u>  85 T.C. at 742-743; see also <u>Cohan v. Commissioner</u>, 39 F.2d at 543-544; <u>Bond v. Commissioner</u>, 100 T.C. at 41.  Respondent's determinations are sustained.

Petitioner has provided a "receipt", a letter from Bethel, canceled checks, the log, and photographs of the old and new fence to substantiate payments of $10,100 to a Mr. Degado for her purchase of the black wrought iron fence.  The so-called receipt is dated September 16, 2005, and purports to be from Juan Degado. The receipt was not issued by Mr. Degado.  The receipt was created on June 2, 2008, by the new owner of the fencing business based upon information supplied by petitioner and, allegedly, by one of the workers who installed the fence.[7]  The Court, therefore, accords little weight to the receipt.

The letter from Bethel concerning the fence is dated October 1, 2005, and is signed by "Elder L.C. Kincy, Pastor [and] Sis Angelique Jackson, Secretary".  The letter acknowledges a $9,000 donation for a "250 foot black rod [sic] iron fence".  The letter, however, fails to satisfy the requirement that the

---

[7]Petitioner did not call the worker as a witness to corroborate her charitable contribution.

organization provide a statement as to whether the organization provided any goods or services in consideration for the donation. See sec. 170(f)(8)(B)(ii); sec. 1.170A-13(f)(2)(ii), Income Tax Regs.

The canceled checks consist of a $1,000 payment to Mr. Degado that was drawn on petitioner's personal account on September 16, 2005, and a $3,000 payment to Mr. Degado that contained the notation "Iron Gates".[8]  The canceled checks, however, are not written acknowledgments from the organization. See sec. 170(f)(8).

---

[8]The $3,000 check was signed by petitioner on Sept. 9, 2005, and was drawn on an account titled in her mother's name.

Cal. Prob. Code sec. 7000 (West 1991) provides that title to a decedent's property passes on the decedent's death to the decedent's heirs as prescribed by the laws governing intestate succession.  As of Aug. 15, 2005, title to the account passed to petitioner's father and certain heirs (including petitioner). See Cal. Prob. Code secs. 6400, 6401, and 6402 (West Supp. 2008), 7000; see also United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985) (State law determines the nature of property rights).

Federal law determines the appropriate Federal income tax treatment of petitioner's $3,000 purported contribution.  United States v. Natl. Bank of Commerce, supra at 722.  An estate is a separate taxable entity.  See sec. 641; Herter v. Commissioner, T.C. Memo. 1961-19.  Generally, estates are allowed deductions for charitable contributions if the contributions are paid out of the estate's gross income and are made "pursuant to the terms of the governing instrument".  Sec. 642(c)(1).  Because petitioner is not the taxpayer who made the contribution, she is not entitled to claim a deduction for the contribution.  See Mellott v. United States, 257 F.2d 798 (3d Cir. 1958); United States v. Norton, 250 F.2d 902, 905 (5th Cir. 1958); see also Stussy v. Commissioner, T.C. Memo. 1997-293.

Taken together, the canceled checks, the letter, the log, and the photographs corroborate petitioner's claim that she expended some money to purchase the fence on Bethel's behalf. Although petitioner has not complied with the substantiation requirements of section 170(f)(8) and the regulations thereunder, the Court is satisfied that petitioner made some payments on behalf of Bethel--but not $10,100. Putting aside the evidentiary issues, the receipt indicates that petitioner made three payments of $3,000, a $1,000 payment, and a $100 payment. The record establishes that petitioner has not provided any other evidence establishing payments over $1,000[9] to Mr. Degado in 2005. Thus, petitioner has not proven that she paid the remaining $9,100 in 2005.[10] Accordingly, the Court finds that petitioner is entitled to a $1,000 charitable contribution deduction for the fence for 2005. See Cohan v. Commissioner, supra at 544 (estimates of a taxpayer's deductions bear heavily against the taxpayer whose inexactitude is of his or her own making); see also Bond v. Commissioner, supra at 41.

---

[9]See supra note 8.

[10]Petitioner entered into evidence a bank statement for the period Jan. 1 to 31, 2006, showing a $3,000 payment by "Draft 009207" that bears petitioner's handwritten notation "Iron Gates". Putting aside the hearsay matter, the Court notes that the payment was "Effective" on Jan. 12, 2006, and posted on Jan. 13, 2006. Thus, it appears that petitioner would be entitled to this $3,000 deduction, if at all, in 2006, not 2005. See secs. 446(a), 461(a).

Petitioner cannot deduct the "Van Payments" as charitable contributions since she continues to own the property. The "contributions", therefore, consist of less than petitioner's entire interest in the property and are not deductible.[11] See sec. 170(f)(3); sec. 1.170A-7(a)(1), Income Tax Regs.; cf. Logan v. Commissioner, T.C. Memo. 1994-445 (classifying the donee's "rent-free" use of the taxpayer's real property as a mere right to use property and disallowing a deduction for its fair rental value as a charitable contribution under section 170(f)(3)). Respondent's determination is sustained.

Petitioner cannot deduct the insurance premium payments for the van as charitable contributions. Petitioner has not shown that Bethel was the sole beneficiary of the policy. See Orr v. United States, 343 F.2d 553 (5th Cir. 1965). In addition, neither petitioner's log nor the letter from the insurance agent dated June 2, 2008, satisfies the contemporaneous acknowledgment requirements of section 1.170A-13(f)(2) and (3), Income Tax Regs. Respondent's determination is sustained.[12]

---

[11]In addition, petitioner has not proven that the limited exceptions of sec. 170(f)(3) apply. See also sec. 1.170A-7(a) and (b), Income Tax Regs.

[12]There is no evidence in the record as to the number of miles petitioner drove in her charitable endeavors that would allow a charitable contribution deduction based either on petitioner's out-of-pocket expenses or on the standard mileage deduction. See sec. 170(i); sec. 1.170A-1(g), Income Tax Regs.

III.   Mortgage Interest Deduction

Section 163(a) allows a deduction for interest paid or accrued within the taxable year on indebtedness.  The "indebtedness" for purposes of section 163 must, in general, be an obligation of the taxpayer and not an obligation of another. Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), affg. T.C. Memo. 1976-150; Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).

Petitioner was not directly liable on the mortgages for which she claimed a mortgage interest deduction.  But petitioner argues that she is entitled to a deduction for mortgage interest that she paid in 2005 pursuant to section 1.163-1(b), Income Tax Regs., which provides in pertinent part:  "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness."

Petitioner claims that she has both a vested and an equitable interest in her mother's property at "319 E Newfield St".  Petitioner testified that she started making the mortgage payments in February when her mother became ill and was no longer able to work.

State law determines the nature of property rights, while Federal law determines the appropriate Federal income tax treatment of those rights. See <u>United States v. Natl. Bank of Commerce</u>, 472 U.S. 713, 722 (1985); <u>Aquilino v. United States</u>, 363 U.S. 509, 513 (1960). Thus, whatever rights or interests petitioner held in the property is determined pursuant to California law.

As is relevant here, title to the property of a decedent's estate vests, subject to administration, in his or her heirs immediately upon death under California law. Cal. Prob. Code sec. 7000; <u>Olson v. Toy</u>, 54 Cal. Rptr. 2d 29, 33 (Ct. App. 1996); <u>Bethel v. Kerksey (In re Estate of Williams)</u>, 140 Cal. Rptr. 593, 597 (Ct. App. 1977) ("when there is an intestate succession, there is an automatic vesting of title in the intestate heirs subject to administration"); see also Cal. Prob. Code secs. 6400, 6401, and 6402. Such vesting is not contingent on any assent, acceptance, or election by the heirs. <u>Taylor v. Crippled Children's Socy. (In re Estate of Taylor)</u>, 108 Cal. Rptr. 778, 781 (Ct. App. 1973) (citing <u>Martin v. McGrath (In re Meyer's Estate)</u>, 238 P.2d 597, 605 (Cal. Dist. Ct. App. 1951)).

The Court considers several factors when determining whether a taxpayer is an equitable or beneficial owner of the property (and thus entitled to mortgage interest deductions). See <u>Blanche v. Commissioner</u>, T.C. Memo. 2001-63, affd. 33 Fed. Appx. 704 (5th

Cir. 2002). As is relevant here, the factors include: (1) Whether the taxpayer had a right to possess the property and to enjoy the use, rents, or profits thereof; (2) whether the taxpayer had a duty to maintain the property; (3) whether the taxpayer was responsible for insuring the property; (4) whether the taxpayer bore the risk of loss of the property; (5) whether the taxpayer was obligated to pay taxes, assessments, and charges against the property; and (6) whether the taxpayer had the right to improve the property without the owner's consent. Id.

Several of these factors weigh against petitioner for the period before her mother's death on August 15, 2005. Specifically, there is no indication that petitioner bore the risk of loss or that she was responsible for maintaining the property, insuring the property, or paying any taxes, assessments, or charges; and there is no indication that she had the right to make improvements. Thus, the Court finds that petitioner was not an equitable or beneficial owner of the property before her mother's death on August 15, 2005. Petitioner is not entitled to mortgage interest deductions for payments she made before August 15, 2005, because she was not directly liable on the notes securing the mortgages and she has

failed to prove that she was the legal, equitable, or beneficial owner of the property before August 15, 2005.[13]

The property's legal title, however, passed, in part, to petitioner on August 15, 2005. Petitioner is entitled to mortgage interest deductions for payments she made from August 15, 2005, subject to the substantiation requirement of section 6001. See Zards v. Commissioner, T.C. Memo. 1995-497 (only mortgage interest paid for the period after the taxpayer becomes the legal or equitable owner of the property is deductible by the taxpayer).

Petitioner provided copies of Forms 1098, Mortgage Interest Statement, to substantiate her mortgage interest deductions. The Forms 1098 show interest payments in 2005 of: (1) $7,857.64 to Countrywide Home Loans (Countrywide); (2) $2,128.85 to POPA Federal Credit Union (POPA); and (3) $825.49 to "Vodofsky". In addition, petitioner provided two canceled checks issued in September 2005: One to Countrywide for $907.89 and one to POPA for $245.50. Petitioner also entered into evidence bank statements from September to December 2005. For September petitioner handwrote on the statement "HP" next to drafts in the sum of $1,040.47. For October petitioner handwrote on the

---

[13]If a taxpayer pays mortgage interest accrued before the date he became the legal or equitable owner of the mortgaged property, the amount must be capitalized as part of his cost of the property. See Koehler v. Commissioner, T.C. Memo. 1978-381 (and cases cited therein).

statement "2nd" with respect to a "Transfer to Coleman Lula M * * * Loan 19" for $245.40. For November petitioner handwrote on the statement "2nd" with respect to a "Transfer to COLEMAN LULA M * * * Loan 19" for $245.40 and "HP" for a withdrawal to "MRS ASSOCIATES" for $841.75. For December petitioner handwrote on the statement "2nd" with respect to a "Transfer to COLEMAN LULA M * * * Loan 19" for $245.40 and "HP" with respect to withdrawals to Countrywide in the sum of $1,827.78 and "MORTGAGE JIT PMT" for $1,728.43.

It is unclear from the record that the September drafts and the payment to "MRS ASSOCIATES" were in fact mortgage payments. In addition, it is unclear from the record whether the "Mortgage JIT PMT" relates to the three mortgages for which interest deductions were claimed rather than to petitioner's home at the "E. 90th" address (for which no Form 1098 was entered into evidence). Petitioner testified that she makes four mortgage payments: One to Countrywide, one to Washington Mutual, one to "Vodofsky", and one to POPA. According to petitioner, the "[Mortgage JIT PMT] could be to any one of the other three."

From the evidence, the Court finds that petitioner is not entitled to mortgage interest deductions for the "Vodofsky" mortgage because she has not established that she made interest payments from August 15 to December 2005. See secs. 163(a), (h), 461. With respect to the Countrywide mortgage, petitioner has

established that she made interest payments in September and December 2005, but she failed to establish that she made interest payments in August, October, and November 2005. Consequently, the Court finds that petitioner is entitled to deductions for mortgage interest paid to Countrywide in September and December 2005. See secs. 163(a), (h), 461. With respect to the POPA mortgage, petitioner has established that she made interest payments from September to December 2005. Accordingly, the Court finds that petitioner is entitled to deductions for mortgage interest paid to POPA from September to December 2005.

IV. Theft Loss Deduction

In general, section 165(a) and (c)(3) allows an individual a deduction for any theft sustained during the taxable year and not compensated for by insurance or otherwise. Among other requirements, petitioner must establish that she personally sustained the theft loss. See Draper v. Commissioner, 15 T.C. 135, 135-136 (1950) (only the owner of the misappropriated property is entitled to a theft loss deduction because the loss is personal to the owner); Malik v. Commissioner, T.C. Memo. 1995-204 (taxpayer could not claim a theft loss deduction because he was not the victim of the theft).

The police officer's incident report states that the location of the theft was Bethel. The officer's narrative explains that "unknown person(s) broke into * * * the interior of

[Bethel]" and stole 2 computers, including monitors and printers, worth $2,000 that were located in an office in the "northwest corner of [Bethel]."

On her Form 4684, Casualties and Thefts Loss, petitioner described the theft event as a "HOME BURGLARY" and described the misappropriated property as "VARIOUS HOUSEHOLD ITEMS" worth $10,148.

Petitioner testified that the items were taken from Bethel, not from her residence. Petitioner explained that she uses "many different things down at [Bethel], but they [are] my personal items". Petitioner also testified that she did not have anything to prove that she owned the items. According to petitioner, she had to take the loss because Bethel did not have insurance.

Petitioner has failed to prove that she owned the misappropriated property. See also Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961) (the Court may reject a taxpayer's uncorroborated, self-serving testimony), affg. 34 T.C. 845 (1960); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (same). Because petitioner has failed to establish that she personally sustained a theft loss, respondent's disallowance of the theft loss is sustained. See Draper v. Commissioner, supra at 135-136; Malik v. Commissioner, supra; see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992) (stating that deductions are strictly a matter of legislative

grace, and taxpayers bear the burden of proving that they are entitled to claim the deduction).

V.  Accuracy-Related Penalty

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount.  Sec. 7491(c).  The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that it is appropriate to impose the penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of reasonable cause, substantial authority, or a similar provision.  Id.

In pertinent part, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.[14]  Section 6662(c) defines the term "negligence" to include "any failure to make a reasonable attempt to comply with the provisions of this title," and the term "disregard" to include "any careless, reckless, or intentional disregard."  Negligence

---

[14]Because the Court finds that petitioner was negligent or disregarded rules or regulations, the Court need not discuss whether there is a substantial understatement of income tax.  See sec. 6662(b); Fields v. Commissioner, T.C. Memo. 2008-207.

also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the section 6662(a) penalty: no penalty is imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith. Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge and education of the taxpayer." Id.

The Court finds that respondent has met his burden of production and that petitioner was negligent. Petitioner did not properly substantiate her deductions as required by the Code and the regulations. Petitioner did not establish a defense for her noncompliance with the Code's requirements. Respondent's determinations are sustained.

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, and/or moot.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.