T.C. Memo. 2010-262

UNITED STATES TAX COURT

HAL HOLLINGSWORTH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3131-09.                    Filed December 2, 2010.

R determined a deficiency in income tax and a penalty
under sec. 6662, I.R.C., for P's 2005 tax year that were
based on P's failure to include certain receipts in income
and the disallowance of certain deductions.

<u>Held</u>:  R's determinations are sustained.

Hal Hollingsworth, pro se.

<u>Karen Lapekas</u> and <u>Michelle M. Robles</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of respondent's determination in a notice of deficiency that petitioner owed an income tax deficiency and a section 6662 penalty for his 2005 tax year.[1]  After concessions by the parties,[2] the issues for determination are:

(1) Whether petitioner's distributions from his section 401(k) retirement savings account are taxable;

(2) whether petitioner received self-employment income in 2005;

(3) whether petitioner is entitled to a deduction for expenses claimed on Schedule C, Profit or Loss From Business;

(4) whether petitioner is entitled to a deduction claimed on Schedule A, Itemized Deductions, for charitable contributions within the meaning of section 170; and

(5) whether petitioner is liable for an accuracy-related penalty under section 6662(a).

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner conceded respondent's determination that a $189 State tax refund from the State of New York is includable in petitioner's gross income.  Respondent conceded his proposed capital gain adjustment of $5,236 and petitioner's entitlement to a short term capital loss of $922.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated facts, with accompanying exhibits, are hereby incorporated by this reference.  At the time his petition was filed, petitioner resided in Miami, Florida.

In 2004, after losing his job, petitioner moved from New York to Miami.[3]  Petitioner moved to Miami in order "to try to put things back together again".

When petitioner first moved to Miami, he lived with his sister, Maria Sherrer (Ms. Sherrer).  Although he would occasionally make contributions to household expenses, petitioner did not pay Ms. Sherrer any rent.  Petitioner also sometimes helped Ms. Sherrer at her business, Sherrer and Sherrer Accounting and Tax Preparation Services, doing minor tasks such as filing, helping with advertising, inputting numbers into a computer, and taking basic information from Ms. Sherrer's clients.  Petitioner was not compensated for his work at Ms. Sherrer's business.

After moving to Miami, petitioner became involved in the Out of the Ashes Foundation, Inc. (foundation), a charitable

---

[3]At trial petitioner contradicted himself by stating he moved to Miami in 2004 and later stating that he moved in 2005. Although resolution of this question does not affect the outcome of this case, because petitioner's sister, Maria Sherrer, testified that petitioner moved in 2004 and petitioner's testimony was more definite when he spoke of moving in 2004, we have found that petitioner moved in 2004.

organization that works with inner-city children.  During 2005 petitioner was a member, director, and employee of the foundation.  Ms. Sherrer was president of the foundation. Petitioner donated small amounts of cash to the foundation throughout 2005 but kept no records of these contributions.

Petitioner explained that in approximately July 2005 he started a multifaceted business called Xcluseif, Inc., which was incorporated during the 2005 tax year but has since been dissolved.[4]  We take judicial notice of the Florida Department of State Division of Corporations' Web site, which reports that the articles of incorporation for Xcluseif were filed on July 19, 2005, and that Xcluseif was administratively dissolved for failing to file an annual report on September 15, 2006.[5]

Petitioner attempted to get a "Tax ID number" for Xcluseif but did not succeed.[6]  Petitioner intended to operate various

---

[4]For ease of reference, we refer to the business as simply Xcluseif throughout this opinion.

[5]A court may take judicial notice of appropriate adjudicative facts at any stage in a proceeding, whether or not the notice is requested by the parties.  See Fed. R. Evid. 201(c), (f); see also United States v. Harris, 331 F.2d 600, 601 (6th Cir. 1964) (explaining that a court may take judicial notice sua sponte).  In general, the court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); see also Evans v. Commissioner, T.C. Memo. 2010-207.

[6]We assume petitioner is referring to an Employer Identification Number, which is also known as a Federal Tax

(continued...)

businesses through Xcluseif including putting drink machines at various locations, providing a UPS shipping center, selling things on eBay, and tutoring.

When petitioner first started Xcluseif, he was still living with Ms. Sherrer and performed most of the work for Xcluseif on his computer at Ms. Sherrer's house. Ms. Sherrer explained that petitioner eventually opened an outlet for Xcluseif on Biscayne.

Petitioner paid the expenses attributable to Xcluseif out of his personal account and with his personal credit cards. While petitioner claimed that he kept records of these expenses, he did not provide this Court with any of the records, stating at trial that he was unaware that they were requested or that Xcluseif was being audited.

In 2005, because of his financial difficulties and, according to petitioner, Hurricane Katrina, he made two withdrawals from his section 401(k) retirement savings account (401(k) account) for a total distribution of $16,951. According to petitioner, most of the distributed money "went toward paying off the loans [he] had taken in previous years against it * * * the small amount that remained was in part used to make ends meet during that time."

---

[6](...continued)
Identification Number. We continue to use petitioner's term of "Tax ID number".

Ms. Sherrer prepared petitioner's 2005 tax return, for which petitioner claimed to have paid her $650 in 2006.[7]  Ms. Sherrer's highest degree is an associate's degree in accounting from Miami Jacobs College.  Ms. Sherrer is not herself a certified public accountant, but she "[makes] sure that one is attached to [her] office".  Petitioner's 2005 Form 1040, U.S. Individual Income Tax Return, was filed electronically on February 6, 2006.  Three items on the Form 1040 are relevant in this case.

First, petitioner claimed a business loss of $19,570 that was due to Xcluseif.  On the attached Schedule C petitioner reported gross receipts of $1,500 and total expenses of $21,070, leading to the $19,570 loss.  Petitioner listed the gross receipts and expenses from Xcluseif as income and expenses from self-employment on Schedule C of his individual return because it seems "the most appropriate thing to do" since Xcluseif did not have a Tax ID number and he did not see a way to separate himself and his personal expenses from Xcluseif.

Second, petitioner included in gross income his 401(k) account distributions of $16,951 and claimed a corresponding Schedule A deduction of $16,951 as "Unreimbursed employee

---

[7]Petitioner paid Ms. Sherrer in 2006, as opposed to 2005, because 2006 was the year that the return was filed.  While both petitioner and Ms. Sherrer testified that petitioner paid Ms. Sherrer $650 for filing the 2005 return, evidence submitted to this Court indicates that petitioner paid Ms. Sherrer $450 for filing the 2005 return with the remaining $200 being the "balance due from prior years".

expenses".[8]  Petitioner claimed the $16,951 itemized deduction

because he "was aware that some regulations had been issued by

the government regarding expenses to offset the issues with

Katrina. * * *  [However, he was] not sure about the details of

those exemptions or exclusions."  Ms. Sherrer was not aware of

any specific 2005 provision allowing petitioner to exclude the

401(k) account distributions from gross income and stated that

while she remembered "some kind of credit" she could not

"remember exactly what it" was.

Third, petitioner claimed a Schedule A deduction of $4,284

for asserted charitable contributions to the foundation.

Petitioner "was under the impression that charitable donations

were always tax deductible".  Ms. Sherrer relied on a document

from the foundation in claiming the charitable contribution

deduction.  The document contained:  (1) The name "Out of the

Ashes Foundation", (2) a date of January 6, 2006, (3) a statement

that petitioner donated $4,725 in cash, and (4) the following

statement:  "The above total represents all contributions

received during the year 2005".  The document did not contain

petitioner's name or the specific 2005 dates on which petitioner

made contributions and in what individual amounts.  In December

2009 Ms. Sherrer obtained a second document from the foundation

---

[8]Also related to his 401(k) account withdrawals, petitioner
included $1,694 of sec. 72(t) additional tax "on IRAs, other
qualified retirement plans, etc."

which was identical to the first except that the line for the donor which was previously blank now contained petitioner's name. Both documents indicated they were sent by "Dr. Carlton Fisher, Chairman" and contained the hand-printed initials "C.F." When respondent attempted to call the telephone number listed on both documents as the foundation's, respondent reached Ms. Sherrer's tax preparation service.

Petitioner believed that at the time his 2005 tax return was prepared, it was fair and accurate. On November 4, 2008, respondent issued a notice of deficiency showing a deficiency in income tax of $8,883 and a section 6662(a) penalty of $1,776.60. Respondent's adjustments to petitioner's 2005 income tax return which remain unresolved include: (1) Disallowing petitioner's $21,070 of Schedule C expenses; (2) disallowing petitioner's $16,951 Schedule A deduction for unreimbursed employee expenses; (3) disallowing petitioner's $4,284 Schedule A deduction for charitable contributions; and (4) determining a section 6662(a) accuracy-related penalty of $1,776.60.

On or about January 7, 2010, petitioner faxed to respondent a signed Form 1040X, Amended U.S. Individual Income Tax Return, for petitioner's 2005 tax year. On the Form 1040X, petitioner: (1) Removed both the income and expenses on Schedule C relating to Xcluseif under the belief that they should be reported on a

separately filed Federal income tax return;[9] (2) claimed a charitable contribution deduction of $5,509, a $1,225 increase from the $4,284 which was deducted on the original Form 1040; and (3) removed the $16,951 itemized deduction related to his 401(k) account distributions, stating on the Form 1040X, Explanation of Changes:  "REMOVE IRA DISTRIBUTION KATRINA EXCLUSION OF $16,951".[10]

Trial was held on January 13, 2010, in Miami, Florida. Additional discrepancies about the alleged 2005 charitable contributions to the foundation arose at trial.  Petitioner testified that he donated at least $4,700, an amount which he considered to be a fair deduction as it was actually less than the true amount.

## OPINION

Respondent did not amend his answer to accommodate the amended tax return nor indicate that he would accept the amended tax return.  Therefore, we decide petitioner's case on the basis of the record and his original tax return.  See Colvin v.

---

[9]At trial, when attempting to explain the removal, petitioner stated that since filing his original 2005 return he had learned that he "should have been operating separate accounts and everything for Xcluseif".  Even though petitioner alleges that the income and expenses for Xcluseif should have been separately reported, a Form 1120, U.S. Corporation Income Tax Return, for Xcluseif's 2005 tax year had not been filed as of the date of trial.

[10]While petitioner removed the $16,951 itemized deduction, he retained the $16,951 in gross income.

Commissioner, 122 Fed. Appx. 788, 790 (5th Cir. 2005) ("even if the Commissioner had a legal duty to accept the amended return, it would have no impact on the deficiencies upheld by the Tax Court, because they were issued before * * * [the taxpayer] attempted to submit his amended return, and amended returns do not vitiate deficiencies that have already been issued."), affg. T.C. Memo. 2005-67.  Furthermore, "the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance of an amended return; instead, an amended return is a creature of administrative origin and grace." Badaracco v. Commissioner, 464 U.S. 386, 393 (1984).

I.  Burden of Proof

In general, determination of a taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determination is improper.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[11]

---

[11]Pursuant to sec. 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may shift to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue."  The burden will shift only if the taxpayer has, inter alia, complied with applicable substantiation requirements and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2).  Petitioner did not raise the burden of proof issue, did not introduce any credible evidence, and failed to comply with the substantiation requirements.  Accordingly, the burden of proof remains on petitioner.

II.  Whether Petitioner's 401(k) Account Distributions Are
     Taxable

Petitioner made two withdrawals from his 401(k) account in
2005, for a total distribution of $16,951.  Petitioner included
$16,951 in income on both his original and amended returns.[12]
Statements made in a tax return signed by a taxpayer may be
treated as admissions.  Lare v. Commissioner, 62 T.C. 739, 750
(1974), affd. without published opinion 521 F.2d 1399 (3d Cir.
1975).  Therefore, we treat petitioner's inclusion of $16,951 in
income on both returns and removal of the $16,951 itemized
deduction on his amended return as an admission.[13]  Accordingly,
we sustain respondent's adjustment on this issue.[14]

_____

[12]We refer to the Form 1040 as the original return and the
Form 1040X as the amended return.

[13]If petitioner had not included the 401(k) account
distributions in income on his original return and removed the
corresponding deduction on his amended return, we would still
reach the same result.  A distribution from a qualified
retirement plan, such as petitioner's 401(k) account, is
includable in the distributee's gross income in the year of
distribution.  See secs. 61(a)(11), 402(a), 4974(c)(1).
Additionally, early withdrawals from sec. 401(k) plan accounts
are generally subject to the requirements of sec. 72(t), which
increases a taxpayer's tax for the taxable year in which the
distribution occurs by 10 percent of the portion of such
distribution which is includable in gross income.  See secs.
72(t)(1), 401(a), (k)(1), 4947(c); see also Uscinski v.
Commissioner, T.C. Memo. 2005-124.  Petitioner never disputed the
$1,695 additional tax due under sec. 72(t) or argued that he fit
within one of the exceptions to the sec. 72(t) additional tax.
Further, petitioner included the $1,695 additional tax on both
his original and amended returns.

[14]We realize petitioner continues to harbor a belief that is
entitled to a deduction of $16,951 for his 401(k) account
(continued...)

III.  Whether Petitioner Had Self-Employment Income

Petitioner listed the gross receipts and expenses of Xcluseif on the Schedule C attached his original return.  On his amended return, petitioner omitted both the gross receipts and the expenses.[15]

---

[14](...continued)
distributions, arguing in his posttrial brief that "consideration could be given to the fact that these funds were used to survive during a horrible hurricane season here in South Florida". Petitioner misunderstands applicable law.  Under sec. 1400Q, certain relief is given to individuals who make withdrawals from qualified retirement plan accounts, such as petitioner's 401(k) account, if the withdrawal is a qualified hurricane distribution. Sec. 1400Q(a).  Potential relief here is that: (1) Unless the taxpayer elects otherwise, any amount required to be included in gross income for such taxable year shall be included ratably over the 3-taxable-year period beginning with such taxable year and (2) the sec. 72(t) additional tax shall not apply.  Sec. 1400Q(a)(1), (5)(A).  A qualified hurricane distribution is "any distribution from an eligible retirement plan made on or after August 25, 2005, and before January 1, 2007, to an individual whose principal place of abode on August 28, 2005, is located in the Hurricane Katrina disaster area and who has sustained an economic loss by reason of Hurricane Katrina".  Sec. 1400Q(a)(4)(A)(i).  Petitioner's 401(k) account distributions are not qualified hurricane distributions for the following reasons: (1) Petitioner did not prove that the distributions took place after Aug. 25, 2005 and (2) other than his unsupported and self-serving testimony, petitioner did not provide evidence that he suffered an economic loss by reason of Hurricane Katrina; rather, it appears petitioner's economic hardship is due more to the fact that he lost his job in New York and Xcluseif failed.  For these reasons, petitioner is not entitled to take advantage of the sec. 1400Q relief provisions.

[15]According to the Schedule C attached to the original return, gross receipts were $1,500 and total expenses were $21,070, resulting in a loss of $19,570.  It is unclear from petitioner's amended return whether he removed the $19,570 loss. He stated in the explanation of changes section on the amended return "remove sch. C loss of $21,070."  This statement is

(continued...)

Petitioner asserts that it was proper to remove the revenue and expenses related to Xcluseif from his individual tax return because they should be reported on a separate Form 1120, U.S. Corporation Income Tax Return. Respondent urges the opposite-- that the revenue and expenses relating to Xcluseif should be reported as due to self-employment on Schedule C of petitioner's individual tax return. We agree with respondent that Xcluseif should be disregarded and the income and expenses attributed to petitioner individually.

A corporation is to be respected as a taxable entity separate and distinct from its owners where the corporation either is organized for a business purpose or carries on a business after incorporation. Serot v. Commissioner, T.C. Memo. 1994-532 (citing Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943)), affd. 74 F.3d 1227 (3d Cir. 1995). While a taxpayer is free to adopt various forms of doing business, the

---

15(...continued)
unclear because the loss was $19,570, not $21,070. It was the Schedule C expenses which were $21,070. We conclude that petitioner removed the $19,570 loss as opposed to the $21,070 expenses for two reasons. First, petitioner's trial testimony indicates that petitioner believes that the income and expenses due to Xcluseif should have been filed separately on a Form 1120. Second, petitioner's amended tax return does not balance otherwise. On the amended return, petitioner made a net increase in adjusted gross income of $33,912 due to four items: (1) Inclusion of a $189 New York State tax refund; (2) inclusion of $16,951 due to the 401(k) account withdrawal; (3) a $2,798 capital loss not previously listed; and (4) removal of the net loss of $19,570 previously reported on Schedule C.

entity must have been organized for a substantial business purpose or actually engage in substantive income-producing activity in order to be recognized as a separate taxable entity. See Pate v. Commissioner, T.C. Memo. 2008-272 (citing Commissioner v. Culbertson, 337 U.S. 733, 743 (1949)), affd. in part and remanded in part 364 Fed. Appx. 917 (5th Cir. 2010).

Xcluseif was incorporated on July 19, 2005. Petitioner claims Xcluseif had $1,500 of revenue and $21,070 of expenses during the 2005 tax year. Yet petitioner failed to prove either that the revenue and expenses were not his and belonged to Xcluseif or that the revenue and expenses dated from after July 19, 2005, and not before. While petitioner argued that a Form 1120 should be filed for Xcluseif's 2005 tax year, as of the date of trial, a Form 1120 had not been filed.

Petitioner admitted that he never received a Tax ID number for Xcluseif. Petitioner never filed an annual report for Xcluseif. It is unclear what Xcluseif's principal business purpose was. The record does not establish whether Xcluseif ever had a place of business; and petitioner acknowledged that "in the end [Xcluseif] never really got off the ground". Petitioner paid for Xcluseif's expenses out of his personal account and stated he "didn't see any way to, to separate [himself] and [his] own expenses, personal expenses, from the things that [he] spent on Xcluseif."

We conclude that Xcluseif had no separate legal existence from petitioner and therefore will not be recognized as a separate entity for Federal tax purposes. We sustain respondent's determination that revenue and expenses attributable to Xcluseif are properly classified as due to self-employment and should be reported on petitioner's individual tax return. Since we hold petitioner had self-employment income, petitioner is also subject to self-employment taxes and is entitled to a deduction for one-half of the tax amount.[16] See sec. 164(f).

IV. Deductions

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to identify each deduction available and show that they have met all requirements as well as to keep books or records to substantiate all claimed deductions. Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974).

---

[16]Sec. 1401 imposes, in addition to other taxes, a tax of 12.40 percent on the self-employment income of every individual. One-half of this tax is then deductible from adjusted gross income (AGI) under sec. 164(f)(1). Sec. 1402(b) defines "self-employment income" as an individual's "net earnings from self-employment". Sec. 1402(a) defines "net earnings from self-employment" as "the gross income derived by an individual from any trade or business carried on by such individual, less the [claimed] deductions [in the year in issue] allowed by this subtitle which are attributable to such trade or business".

A.   Whether Petitioner Is Entitled To Deduct Expenses
     Listed on Schedule C

After holding, see supra part III, that petitioner must
include the revenue and expenses attributable to Xcluseif as due
to self-employment on his individual tax return, we must
determine which, if any, of the $21,070 of claimed expenses
petitioner is allowed to deduct.

Section 162(a) authorizes a deduction for "all the ordinary
and necessary expenses paid or incurred during the taxable year
in carrying on any trade or business".  A trade or business
expense is ordinary for purposes of section 162 if it is normal
or customary within a particular trade, business, or industry and
is necessary if it is appropriate and helpful for the development
of the business.  Commissioner v. Heininger, 320 U.S. 467, 471
(1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940).

The evidence is unclear as to what Xcluseif's business
actually entailed, and thus the Court has no way to determine
which expenses are ordinary and necessary.  And even if
petitioner demonstrated that the alleged expenses were ordinary
and necessary to Xcluseif's business, he did not substantiate
them.  The record consists only of petitioner's unsupported
testimony.  He claims he kept records, but they are not a part of
the record in this case.  Where taxpayers do not substantiate
their reported expenses, the Commissioner is not arbitrary or
unreasonable in determining that the claimed deductions should be

denied.  See Roberts v. Commissioner, supra at 837.[17]

Accordingly, we sustain respondent's adjustment disallowing

petitioner's Schedule C expenses of $21,070.

    B.    Whether Petitioner Is Entitled to a Schedule A
Deduction for Charitable Contributions Within the
Meaning of Section 170

While petitioner claims he is entitled to a Schedule A

deduction for his charitable contributions to the foundation, he

has been inconsistent as to what amount he contributed, claiming

$4,284 on his original return, $5,509 on his amended return, and

$4,700 at trial.  Additionally, the document from the foundation

that Ms. Sherrer used to claim the charitable contribution

deduction listed $4,725 as petitioner's charitable contribution.

Section 170(a)(1) allows a deduction for contributions to

charitable organizations defined in section 170(c).  Section

170(f)(8) provides recordkeeping requirements for certain

charitable contributions.  Specifically, section 170(f)(8)(A)

provides:  "No deduction shall be allowed under subsection (a)

for any contribution of $250 or more unless the taxpayer

substantiates the contribution by a contemporaneous written

---

[17]Under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), if a taxpayer claims a deduction for a business expense and cannot fully substantiate it, the Court, except for expenses governed by sec. 274, may approximate the allowable amount. However, the taxpayer must provide reasonable evidence from which to estimate that amount.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  The lack of any evidence in this case precludes this Court from attempting an approximation.

acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B)."[18]  The written acknowledgment must include:  (1) The amount of the cash contribution, (2) whether the donee organization provided any goods or services in consideration of the donation, and (3) if so, a description and good faith estimate of the value of those goods or services.  Sec. 170(f)(8)(B).  A written acknowledgment is contemporaneous if it is obtained by the taxpayer on or before the earlier of: (1) The date the taxpayer files the original return for the taxable year of the contribution or (2) the due date (including extensions) for filing the original return for the year.  Sec. 170(f)(8)(C); sec. 1.170A-13(f)(3), Income Tax Regs.

Petitioner relies on two different documents from the foundation to substantiate his charitable contribution deduction. The first document has a date of January 6, 2006, and does not contain petitioner's name.  The second was received in December 2009 and is identical to the first except that it does contain petitioner's name.[19]

---

[18]Separate contributions of less than $250 are not subject to the requirements of sec. 170(f)(8), regardless of whether the sum of the contributions made by a taxpayer to a donee organization during a taxable year equals $250 or more.  See sec. 1.170A-13(f)(1), Income Tax Regs.

[19]The first letter was marked Exhibit 4-P and the second Exhibit 5-P.  Respondent objected to both exhibits on grounds of
(continued...)

Both documents fail the requirements of section 170(f)(8) because they fail to state whether the foundation provided any goods or services in consideration for petitioner's charitable contribution. See <u>Friedman v. Commissioner</u>, T.C. Memo. 2010-45 (stating that the statement under section 170(f)(8)(B)(ii) that no goods or services were provided by the donee in exchange for the contribution is necessary for a charitable contribution deduction); <u>Kendrix v. Commissioner</u>, T.C. Memo. 2006-9 (denying a charitable contribution deduction because the receipt failed to state whether the donee provided any goods or services in consideration); <u>Castleton v. Commissioner</u>, T.C. Memo. 2005-58 (denying a charitable contribution deduction for reasons including that the receipt failed to state whether the donee provided goods or services), affd. 188 Fed. Appx. 561 (9th Cir. 2006).[20]

---

[19](...continued) authenticity. The issue of admissibility is moot because petitioner is not entitled to a deduction for charitable contributions regardless of whether the documents marked as Exhibits 4-P and 5-P are introduced into evidence, and therefore we need not decide the authenticity issue.

[20]Other problems with both documents include that they fail to state the date of petitioner's contribution(s); they fail to contain a breakdown of amounts petitioner contributed; the original document does not contain petitioner's name; and the second document fails to meet the "contemporaneous" requirement of sec. 170(f)(8). Petitioner testified that he contributed small amounts to the foundation throughout the year, stating: "The amounts [were] always small amounts. There was no time at which I wrote a $5,000, a $2,000 check or a $500 check to Out of

(continued...)

Because petitioner failed to substantiate his charitable contributions, he is not entitled to a charitable contribution deduction. Accordingly, we sustain respondent's adjustment with regard to this issue.

## V. Section 6662 Accuracy-Related Penalty

Under section 7491(c), respondent bears the burden of production with respect to petitioner's liability for the section 6662(a) penalty. This means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6662(a) imposes an accuracy-related penalty of 20 percent on any underpayment that is attributable to causes specified in subsection (b). Respondent asserts two causes justifying the imposition of the penalty: Negligence and a substantial understatement of income tax. Sec. 6662(b)(1) and (2).

"[N]egligence" is "any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code]". Sec. 6662(c). Under caselaw, "'Negligence is a lack of

_____

[20](...continued)
the Ashes * * * I never had that amount of money". The documents stated: "the above total represents all contributions received during the year 2005." The total amount was $4,725. The document was dated Jan. 6, 2006. We have no way of knowing on the basis of these documents on what dates in 2005 petitioner contributed cash to the foundation and in what amounts.

due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Negligence can also include any failure by the taxpayer to keep adequate records and to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. A substantial understatement of income tax is an understatement that exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate: (1) Reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances" with the most important factor being the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner was negligent and substantially understated his 2005 tax liability. Petitioner believed that when the tax return

was prepared, it was "a fair and accurate way to report it", yet for most of the issues on the return "I feel unqualified to comment." When asked why he took certain positions in his tax return, petitioner was vague and uninformed. He stated he deducted his 401(k) account distributions because "the government had issued that statement about Katrina", but he was unsure whether he was actually entitled to the deduction. He deducted his charitable contributions because he "was always of the opinion that charitable contributions were deductible". He failed to include the $189 New York State tax refund in income for "no particular reason". Further, petitioner failed to substantiate his claimed expenses and deductions.

Petitioner relied on his sister to prepare his tax return, but she was also vague and unsure of the law.[21] She could not remember why the 401(k) account distributions were deducted on the original return. She indicated that she had gone over

_____

[21]This Court has articulated a three-prong test in cases where a taxpayer attempts to rely upon professional advice to negate a sec. 6662(a) accuracy-related penalty determined by the Commissioner. In order to do so, "the taxpayer must prove * * * that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002). Further, "reliance may not be reasonable or in good faith if the taxpayer knew, or reasonably should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law." Sec. 1.6664-4(c)(1), Income Tax Regs.

Katrina relief issues with Stuart Gladsden, a certified public accountant she consulted with but did not remember details; she was unsure whether she applied 2005 law when preparing petitioner's return; and she could not remember any of the documents or receipts she used in preparing the return and "never really noticed that [petitioner's] name was not on the first" document from the foundation used in claiming the charitable contribution deduction.

On the basis of the above, respondent has met his burden of production with regard to the section 6662(a) accuracy-related penalty and petitioner has failed to meet the burden of proof with regard to the section 6664(c)(1) exception. Therefore, we sustain respondent's imposition of a section 6662(a) accuracy-related penalty for petitioner's 2005 tax year.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

under Rule 155.